131 F.3d 1317
 97 Cal. Daily Op. Serv. 9395, 97 Daily Journal
D.A.R. 15,121
NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE,
LOS ANGELES BRANCH; Multicultural Collaborative; Southern
Christian Leadership Conference of Greater Los Angeles;
California Public Interest Research Group; Southern
California Americans for Democratic Action; David E. Allen;
Frank L. Berry; Hester M. Watkins; Talt Coldiron;
Dolores C. Stephens; Isaac R. Elnecave; Denise M.M. Robb;
Michael A. Feinstein; James E. Sturm; Allen Rubinstein;
Arnold Arbiso; Charles L. Lindner, Plaintiffs-Appellants,
v.
Bill JONES, Secretary of State of California; Conny B.
McCormack, Registrar of Voters for Los Angeles County;
Michael D. Antonovich; Yvonne Braithwaite Burke; Deane
Dana; Gloria Molina; Zev Yaroslavsky, Members of the Board
of Supervisors of Los Angeles County; Board of Supervisors
of Los Angeles County, Defendants-Appellees.
 No. 96-56455.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Aug. 4, 1997.
Decided Dec. 16, 1997.
 
 Abigail Turner and John C. Bonifaz, National Voting Rights Institute, Boston, Massachusetts, for the plaintiffs-appellants.
 Thomas A. Blake, Deputy Attorney General, San Francisco, California, for the defendant-appellee Jones.
 Halvor S. Melom, Principal Deputy County Counsel, Los Angeles, California, for the defendants-appellees of Los Angeles County.
 Appeal from the United States District Court for the Central District of California; Dickran Tevrizian, District Judge, Presiding. D.C. No. CV-96-03469-DT.
 Before: HALL and T. G. NELSON, Circuit Judges, and WINMILL, District Judge.*
 CYNTHIA HOLCOMB HALL, Circuit Judge:
 
 
 1
 Plaintiffs appeal from the district court's 12(b)(6) dismissal of their complaint seeking declaratory and injunctive relief. This court has jurisdiction pursuant to 28 U.S.C. § 1291.
 
 
 2
 This court reviews a motion to dismiss de novo. Stone v. Travelers Corp., 58 F.3d 434, 436-37 (9th Cir.1995).
 
 
 3
 Because plaintiffs allege no cognizable constitutional injury, we AFFIRM.
 
 
 4
 * Plaintiff Charles Lindner is a former judicial candidate. The remaining plaintiffs are voters and associations of voters who claim that they lack wealth and access to wealth.
 
 
 5
 Defendants are Bill Jones, the Secretary of State of California; the Los Angeles County Registrar of Voters ("Registrar"); members of the Los Angeles County Board of Supervisors ("Board"); and the Board itself.
 
 
 6
 Plaintiffs challenge California's campaign finance system for judicial elections. They claim that Los Angeles County ("County") has in place a "wealth primary," which requires the expenditure of a substantial amount of money to run a "meaningful" campaign. This process effectively excludes candidates who are neither wealthy nor indigent from running a "meaningful" campaign and it prevents voters who are neither wealthy nor indigent from hearing all candidates' messages and from contributing effectively to a candidate's "meaningful" campaign. As a concrete example of a government action that contributes to this "wealth primary," plaintiffs point to the requirement that candidates reimburse the costs of printing candidate statements in the Official Sample Ballot and Voter Information booklet ("Sample Ballot").
 
 
 7
 By statute, the Registrar must distribute a Sample Ballot to each registered voter in the County. Each candidate is permitted to submit for publication in the Sample Ballot a 200-word statement describing his or her qualifications and education. Cal. Elec.Code § 13307.
 
 
 8
 The statute gives the Board discretion each election cycle to determine whether the candidates who choose to include statements must reimburse the County for the actual costs of including their statements. Cal. Elec.Code § 13307. The statute authorizes advance payment by the candidates of the estimated costs of printing the statements. The County cannot profit from the payments; the amount the candidates paid will be adjusted after the election if necessary; and the funds do not finance the costs of the election. If a candidate is indigent, she is not required to pay the costs in advance, but she may be billed her pro rata share after the election.[1] Cal. Elec.Code § 13309. The Board has made candidates reimburse the County for the costs of printing their statements in every election cycle since 1965.
 
 
 9
 Plaintiffs seek declaratory and injunctive relief, claiming that the "wealth primary" system violates their rights under the First Amendment and the Equal Protection Clause. They claim that for every candidate to have the opportunity to run a meaningful campaign, the County must include the candidate's statement in the Sample Ballot for free and allot an amount of money to the candidate that would allow him to run a meaningful campaign.[2]
 
 
 10
 The district court, in two separate orders, dismissed plaintiffs' causes of action against defendants. The court dismissed the claims against defendant Jones because the plaintiffs had not alleged specific facts that Jones had violated their rights.[3] The court dismissed the claims against the remaining defendants because the plaintiffs failed to state an injury in fact and therefore lack standing.[4]
 
 
 11
 The district court did not specifically address the state law claims, and appellants have not raised the state law claims on appeal. These claims are therefore waived.
 
 II
 
 12
 The components of the "wealth primary" attributable to defendants are an absence of public funding for judicial campaigns and the use of a cost reimbursement system for printing candidate statements in the Sample Ballot.
 
 
 13
 Plaintiffs here claim that the "wealth primary" violates Equal Protection. They contend that the "wealth primary" distinguishes among candidates based on financial resources because meaningful campaigns require large expenditures, and it distinguishes among voters based on financial resources because those with fewer resources are unable to financially support a candidate, and a successful candidacy requires financial support.
 
 
 14
 When analyzing an Equal Protection claim, heightened scrutiny is applied only when a restriction burdens a suspect class or a fundamental right. San Antonio Independent School Dist. v. Rodriguez, 411 U.S. 1, 17, 93 S.Ct. 1278, 1288, 36 L.Ed.2d 16 (1973). Without heightened scrutiny, a distinction need be only rationally related to a legitimate purpose. E.g., Clements v. Fashing, 457 U.S. 957, 963, 102 S.Ct. 2836, 2843-44, 73 L.Ed.2d 508 (1982).
 
 
 15
 * Wealth is not a suspect category in Equal Protection jurisprudence. Harris v. McRae, 448 U.S. 297, 322-23, 100 S.Ct. 2671, 2690-91, 65 L.Ed.2d 784 (1980); United States v. Barajas-Guillen, 632 F.2d 749, 753 (9th Cir.1980). Plaintiffs' claims are not entitled to heightened scrutiny on this basis.
 
 
 16
 Race is a suspect class. However, to the extent that plaintiffs allege that the cost recovery system has a disparate impact on racial minority groups, the Equal Protection Clause is not implicated by classifications with disparate racial impact in the absence of discriminatory intent. Washington v. Davis, 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976). Plaintiffs do not allege discriminatory intent. Thus, the "wealth primary" does not burden a suspect class.
 
 B
 
 17
 Plaintiffs' primary argument is that heightened scrutiny should be applied because the cost recovery system burdens their fundamental rights to have access to every candidate's viewpoints; to elect candidates of their choice; and, in the case of plaintiff Lindner, to run successfully for public office.
 
 1. First Amendment Rights
 
 18
 Plaintiffs contend that the statutory scheme for running judicial elections burdens their fundamental First Amendment rights, including their right of access to candidates' viewpoints.
 
 
 19
 A forum created by the government to allow a limited class of speakers to address a particular class of topics, such as the voters' pamphlet here, is a limited public forum. Kaplan v. County of Los Angeles, 894 F.2d 1076, 1080 (9th Cir.1990). As such, content neutral restrictions must be shown "to serve a significant state interest in a narrowly tailored fashion and leave open ample alternative channels of communication." Id. (citing Perry Educ. Ass'n v. Perry Local Educators' Ass'n, 460 U.S. 37, 45, 103 S.Ct. 948, 955, 74 L.Ed.2d 794 (1983)).
 
 
 20
 The Kaplan court examined the interests on each side of California's cost recovery scheme for judicial elections. The cost recovery scheme at issue here is designed to recover the actual costs of printing the candidate's statement. It does not affect a candidate's ability to get his or her name on the ballot; nor does it affect the other means available to candidates to disseminate their views to the public. This court has held that "it does not violate the First Amendment for a public entity to collect charges that fairly reflect costs incurred by the municipality in connection with an activity involving expression." Kaplan, 894 F.2d at 1081 (citations omitted). Kaplan clearly disposes of Lindner's claim to a First Amendment right to have his statement published for free.
 
 
 21
 Voter plaintiffs attempt to distinguish Kaplan by arguing that the voters are the intended users of the Sample Ballot and that they are deprived of information regarding a candidate's qualifications when that candidate cannot afford to pay. They claim that while Kaplan addressed the candidate's rights as a speaker in this limited public forum, it did not address the voters' rights as listeners. Their rights as listeners, they contend, outweigh the rights of the speaker. There is no support for this proposition.
 
 
 22
 The Supreme Court has found that First Amendment protection is afforded "to the communication, to its source and its recipients both." Virginia Pharmacy Bd. v. Virginia Consumer Council, 425 U.S. 748, 756, 96 S.Ct. 1817, 1823, 48 L.Ed.2d 346 (1976). In Virginia Pharmacy, the Court found that where First Amendment protection attached to the flow of drug price information, those rights inured both to advertisers seeking to distribute the information and to plaintiffs, who were recipients of the drug price advertising. The Court concluded that "[i]f there is a right to advertise, there is a reciprocal right to receive the advertising." Id. at 757, 96 S.Ct. at 1823.
 
 
 23
 While both the speaker and the listener have the right to assert First Amendment rights, no precedent exists for the proposition that the listener's rights are greater than those of the speaker.[5] Thus, voter plaintiffs, as recipients of campaign speech, have no greater rights than the candidates to have candidates publish statements in the Sample Ballot. Therefore, Kaplan controls voter plaintiffs' claims as well; voter plaintiffs have no right to receive all of the information they would like in the Sample Ballot.
 
 
 24
 Similarly, plaintiffs' status as voters in an election does not extend their First Amendment rights to include a more general right to receive publicly funded campaign speech. The First Amendment simply does not guarantee access to all of the information a voter would like to receive. Voters' rights include the "right of individuals to associate for the advancement of political beliefs, and the right of qualified voters, regardless of their political persuasion, to cast their votes effectively." Anderson v. Celebrezze, 460 U.S. 780, 787, 103 S.Ct. 1564, 1569, 75 L.Ed.2d 547 (1983) (holding state's early filing deadline, which excluded independent candidate from ballot, unconstitutional). Elections do not have a general expressive function. See Burdick v. Takushi, 504 U.S. 428, 112 S.Ct. 2059, 119 L.Ed.2d 245 (1992). Plaintiffs here ask this panel to extend the First Amendment's guarantees beyond those articulated in any previous decision. We refuse to do so. Voter plaintiffs have no fundamental right to have candidates' campaigns publicly funded.
 
 
 25
 Voter plaintiffs also argue that there is an issue of viewpoint discrimination because voters have a right to receive the viewpoints of all candidates. This argument is meritless. The challenged requirement requires either all or none of the participating candidates to reimburse the County for the costs of printing the statement. Moreover, all candidates must fund their campaigns themselves. There is no viewpoint distinction. Nor have the plaintiffs alleged that the requirement to reimburse costs and the lack of public funding are intended to or have the effect of discriminating against a particular viewpoint. The "wealth primary" does not burden any fundamental First Amendment rights.
 
 2. Right to Elect Candidates of Choice
 
 26
 Plaintiffs claim that voters have a fundamental right to contribute effectively to a candidate's campaign. They rely on Smith v. Allwright, 321 U.S. 649, 64 S.Ct. 757, 88 L.Ed. 987 (1944), and Terry v. Adams, 345 U.S. 461, 73 S.Ct. 809, 97 L.Ed. 1152 (1953), for this proposition.
 
 
 27
 In Smith, the Court found that the exclusion of African Americans from a Democratic primary was unconstitutional. Smith is different in two crucial respects from the case at hand. First, the Smith Court found that the primary system was, through Texas' statutory scheme, an actual part of the election process; because African American voters were denied participation in the primaries, they were denied their right to vote. Plaintiffs attempt to stretch this logic to fit the facts here. They argue that a candidate must spend money as a necessary part of the election process; because voter plaintiffs lack wealth, they cannot contribute financially to this necessary part of a candidate's campaign. However, in Smith, Texas' statutory scheme made the primaries a part of the election process, and African Americans were unequivocally denied access to that part of the process. Here, there is no state action putting wealthy voters in a better position to contribute to campaigns than nonwealthy voters. We refuse to attribute societal differences in income or the high cost of running a judicial campaign to the State.
 
 
 28
 Second, the right being denied in Smith was the right of African-American voters to cast votes in the primary, and the Court relied on plaintiffs' constitutional right to vote. 321 U.S. at 661-62, 64 S.Ct. at 763-64. There is simply no claim here that voter plaintiffs are denied their right to cast votes in any part of the election process. We do not equate the ability to contribute financially to a campaign prior to voting with the right to cast a vote.[6] Smith is inapposite.
 
 
 29
 In Terry, the Court found that the combined actions of a private association and the Democratic Party denied African Americans the right to vote in primaries. The Court relied on cases, including Smith, where African-American voters were denied access to voting for candidates in primaries. Like Smith, Terry vindicated African-American voters' rights to cast votes in primary elections. The inability to influence other peoples' votes through campaign contributions is not equivalent to the inability to cast one's own vote. Neither Smith nor Terry confers a right on voters to have equal influence in the election process.
 
 
 30
 Nor can plaintiffs cite any case establishing a fundamental right of voters to contribute to a successful campaign. Plaintiffs' inability to help a candidate win an election does not prevent those candidates from appearing on the ballot. See Lubin v. Panish, 415 U.S. 709, 94 S.Ct. 1315, 39 L.Ed.2d 702 (1974). In Lubin, the Court struck down a candidate filing fee requirement that could not be waived, even in cases of indigence. In that case, the right to vote was burdened because of the barriers to being placed on the ballot; thus voters did not have the option of casting their vote for an otherwise qualified candidate. The Court clarified that, "[t]his does not mean every voter can be assured that a candidate to his liking will be on the ballot, but the process of qualifying candidates for a place on the ballot may not constitutionally be measured solely in dollars." Id. at 716, 94 S.Ct. at 1320 (emphasis added). There is no contention here that either voters' wealth or a candidate's wealth affects their place on the ballot.
 
 
 31
 While the Equal Protection Clause confers on voters a right "to participate in elections on an equal basis with other qualified voters," that right does "not protect any 'political group,' however defined, from electoral defeat." Mobile v. Bolden, 446 U.S. 55, 77, 100 S.Ct. 1490, 1505, 64 L.Ed.2d 47 (1980). The Equal Protection Clause does protect the equal weight of each person's vote, as in redistricting cases. See, e.g., Garza v. County of Los Angeles, 918 F.2d 763 (9th Cir.1990). The Clause also protects voters' rights to cast their votes without being charged a poll tax. See Harper v. Virginia Bd. of Elections, 383 U.S. 663, 664, 666, 86 S.Ct. 1079, 1080, 1081, 16 L.Ed.2d 169 (1966). It also protects the right of voters to associate in groups to advance political beliefs. See Anderson, 460 U.S. at 787, 103 S.Ct. at 1569.
 
 
 32
 None of these voters' rights cases help plaintiffs here. Plaintiffs do not allege that they are denied their right to vote or that their votes are diluted, but rather that their ability to influence others prior to voting is diminished by their lack of wealth. There is no authority for the Equal Protection claim plaintiffs make here-namely, the right of each voter to have equal access to the campaigning process. The voters have not shown any fundamental right that is burdened by California's judicial election process.
 
 3. Right to Run for Office
 
 33
 Plaintiff Lindner cannot show that the election process violates any of his fundamental rights as a candidate. Candidates do not have a fundamental right to run for public office. E.g., Clements, 457 U.S. at 963, 102 S.Ct. at 2843 (quoting Bullock v. Carter, 405 U.S. 134, 143, 92 S.Ct. 849, 855, 31 L.Ed.2d 92 (1972)). The cost recovery system does not affect a candidate's right to appear on the ballot, participate in an election, or disseminate information to the public. See Bullock, 405 U.S. at 143, 92 S.Ct. at 855 (holding high filing fees to appear in primaries erected barrier to appearing on ballot and were unconstitutional). Here, as in Kaplan, the system provides "one method for candidates to express their qualifications to the electorate, if they choose to do so and share the cost." 894 F.2d at 1082. The challenged "wealth primary" does not burden any of Lindner's fundamental rights.
 
 C
 
 34
 Because the "wealth primary" does not burden a suspect class nor a fundamental right, we analyze the "wealth primary" using the rational basis test.
 
 
 35
 The state actions at issue here include the lack of public funding and the implementation of the cost reimbursement system. Both of these actions are rationally related to the legitimate purpose of having candidates finance their own campaigns. Refusing to publicly fund an activity, such as judicial campaigning, is a rational and permissible choice of state allocation of funds. See Harris, 448 U.S. at 316, 100 S.Ct. at 2687-88 (finding no state obligation to remove financial barriers that are not of its own creation). Similarly, requiring candidates to reimburse the printing costs of their candidate statements is permissible as well. See M.L.B. v. S.L.J., --- U.S. ----, ---- - ----, 117 S.Ct. 555, 567-69, 136 L.Ed.2d 473 (1996) (Government's "need for revenue to offset costs, in the mine run of cases, satisfies the rationality requirement."). The candidates are only required to reimburse for the cost of printing their actual statement if they choose to submit such a statement. This is one of many ways for candidates to campaign.
 
 
 36
 The Supreme Court has also expressed its views regarding the position plaintiffs take in this case. In Timmons v. Twin Cities Area New Party, the Supreme Court, holding Minnesota's anti-fusion law valid, reasoned that "[m]any features of our political system-e.g., ... the high costs of campaigning-make it difficult for third parties to succeed in American politics.... But the Constitution does not require States to permit fusion any more than it requires them to move to proportional-representation elections or public financing of campaigns." --- U.S. ----, ----, 117 S.Ct. 1364, 1371, 137 L.Ed.2d 589 (1997) (citations omitted). The Supreme Court has rejected the notion that all candidates are entitled to equal footing in the campaigning process, and we reject it as well. Neither candidates nor voters have a right to judicial elections that are financially viable for all candidates seeking election. Without heightened scrutiny, the statutory system clearly passes muster.
 
 III
 
 37
 The plaintiffs fail to state a claim upon which relief can be granted. This court's Kaplan decision, as well as Supreme Court precedent, make clear that the lack of public campaign financing and the cost reimbursement system do not offend either the First or Fourteenth Amendment with regard to voters or judicial candidates. The judgment of the district court is AFFIRMED.
 
 
 
 *
 The Honorable B. Lynn Winmill, United States District Judge for the District of Idaho, sitting by designation
 
 
 [1]
 The portion of the statute authorizing the County to require indigent candidates to reimburse printing costs after the election is not challenged in this suit, as plaintiffs specifically categorize themselves as neither indigent nor wealthy. We therefore issue no opinion as to the validity of the cost reimbursement system as it applies to indigent candidates
 
 
 [2]
 At oral argument, plaintiffs' counsel suggested that the amount of money necessary to run a meaningful campaign in each election could be determined on a case by case basis
 
 
 [3]
 We perceive plaintiffs' claims more broadly than the district court, including a challenge to the statewide election system, rather than only a challenge to the cost reimbursement system. Therefore, we do not dismiss the claims against defendant Jones separately
 
 
 [4]
 For the purposes of this appeal, we assume standing and reach the merits. See Clow v. U.S. Dep't. of Housing and Urban Dev., 948 F.2d 614, 616 n. 2 (9th Cir.1991)
 
 
 [5]
 In fact, in Virginia Pharmacy, the Court found the listener's rights to derive from the existence of the speaker's rights. 425 U.S. at 756, 96 S.Ct. at 1823 ("Freedom of speech presupposes a willing speaker.... [W]here a speaker exists, as is the case here, the protection afforded is to the communication ...."); accord Application of Dow Jones and Co., 842 F.2d 603, 608 (2d Cir.1988) (finding that the "right to receive speech does not enlarge the rights" accorded to the speaker because listeners' rights are "entirely derivative" of speaker's rights)
 
 
 [6]
 Moreover, plaintiffs are not precluded from contributing to candidates' campaigns by other means, such as volunteering their time