**Robert McLEAN, Petitioner–Appellant,**

v.

**Joseph H. CRABTREE, Warden, Federal Correctional Institute, Sheridan, Oregon, Respondent–Appellee.**

**Raul Cruanas, Petitioner–Appellant,**

v.

**Joseph H. Crabtree, Warden, Federal Correctional Institute, Sheridan, Oregon, Respondent–Appellee.**

**Mario Mendoza, Petitioner–Appellant,**

v.

**Joseph H. Crabtree, Warden, Federal Correctional Institute, Sheridan, Oregon, Respondent–Appellee.**

**Kao Saefong, Petitioner–Appellant,**

v.

**Joseph H. Crabtree, Warden, Federal Correctional Institute, Sheridan, Oregon, Respondent–Appellee.**

Nos. 98–35675, 98–35689, 98–35762, 98–35766.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 13, 1999.

Decided April 7, 1999.

As Amended on Denial of Rehearing and Rehearing En Banc June 25, 1999.

Stephen R. Sady, Chief Deputy Federal Public Defender, Portland, Oregon, for the petitioners-appellants.

Thomas M. Gannon, United States Department of Justice, Washington, DC, for the respondent-appellee.

Before: LEAVY, McKEOWN and WARDLAW, Circuit Judges.

WARDLAW, Circuit Judge:

Federal prisoners Robert L. McLean, Raul Cruanas, Mario Mendoza, and Kao Saefong (collectively "Appellants") appeal the district court's denial of their 28 U.S.C. § 2241 petitions for habeas corpus. The district court rejected Appellants' claims that the Bureau of Prisons (the "BOP") violated their statutory and constitutional rights when it denied their requests for an 18 U.S.C. § 3621(e)(2)(B) sentence reduction[1] on the basis of an Immigration and Naturalization Service ("INS") detainer lodged against each. We have jurisdiction pursuant to 28 U.S.C. § 1291 and 28 U.S.C. § 2253(a), and we affirm.

---

1. Section 3621(e)(2)(B) provides: "The period a prisoner convicted of a nonviolent offense remains in custody after successfully completing a treatment program may be reduced by the Bureau of Prisons, but such reduction may not be more than one year from the term

■ We review the district court's decision to grant or deny a federal prisoner's petition for habeas corpus *de novo*. *See United States v. Cruz–Mendoza*, 147 F.3d 1069, 1071–1072 (9th Cir.1998).

## I

Appellants are presently serving custodial sentences [2] at the Federal Correctional Institute in Sheridan, Oregon ("FCI Sheridan"). While at FCI Sheridan, each completed a residential substance abuse treatment program despite his ineligibility for the sentence reduction incentive provided under the Violent Crime Control and Law Enforcement Act of 1994, 18 U.S.C. § 3621(e)(2)(B) ("sentence reduction"), which Congress enacted to encourage prisoners to complete substance abuse treatment programs. *See* 18 U.S.C. § 3621(e)(2). The BOP found Appellants ineligible for sentence reduction pursuant to: (1) a BOP regulation that conditions

sentence reduction on the completion of a community-based treatment program, *see* 28 C.F.R. § 550.58 (1997) ("the community requirement"),[3] and (2) a BOP interim rule that categorically excludes prisoners with detainers from sentence reduction eligibility, *see* 61 Fed.Reg. 25121 (1996); 28 C.F.R. § 550.58 (1997) ("the detainer exclusion").[4]

Appellants petitioned for habeas corpus relief claiming that the community requirement and detainer exclusion exceed the scope of the BOP's authority under § 3621(e)(2)(B) and violate the Due Process and Equal Protection Clauses of the Fifth and Fourteenth Amendments. In four separate, but virtually identical orders, the district court denied the petitions, citing its recent decision in *Birth v. Crabtree*, 996 F.Supp. 1014 (D.Or.1998).[5] In *Birth,* the district court held that § 3621(e)(2)(B) does not create a due process liberty interest in the sentence reduction, citing our recent decision in *Jacks v. Crabtree*, 114 F.3d 983, 986 (9th Cir.1997),

the prisoner must otherwise serve." 18 U.S.C. § 3621(e)(2)(B) (1994).

**2.** Appellant McLean was sentenced to five years incarceration upon his conviction in the Western District of Washington on charges of conspiracy to import cocaine and marijuana, in violation of 21 U.S.C. §§ 853, 963, 960(b). Appellant Cruanas was sentenced to 120 months incarceration upon his conviction in the Northern District of Illinois for possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a). Appellant Mendoza was sentenced to 66 months of incarceration upon his conviction in the Western District of Michigan on charges of conspiracy to possess with intent to distribute marijuana, in violation of 21 U.S.C. § 841(a). Appellant Saefong was sentenced to 59 months of incarceration upon his conviction in the Western District of Washington on charges of conspiracy to distribute heroin, in violation of 21 U.S.C. §§ 841(a)(1), 846, 841(b)(1)(A).

**3.** Section 550.58 provides:
[A]n inmate who was sentenced to a term of imprisonment [for a nonviolent offense] and who completes a residential drug abuse treatment program including subsequent transitional services in a community-based program (i.e., in a Community Corrections Center or on home confinement) ... may be eligible ... for early release by a period not to exceed 12 months.
28 C.F.R. § 550.58 (1997).

**4.** The *Code of Federal Regulations* does not expressly exclude prisoners with detainers from sentence reduction eligibility; however, "[i]nmates who are not eligible for participation in a community-based program as determined by the Warden on the basis of his or her professional discretion" are ineligible for sentence reduction. 28 C.F.R. § 550.58 (1997). The BOP considers prisoners with detainers "[i]nmates who will not be able to complete the community-based portion of treatment ... due to custodial considerations." 61 Fed.Reg. 25121 (1996).

**5.** Other courts that have considered the community requirement and the detainer exclusion have upheld their validity in the face of various challenges by prisoners with INS detainers. *See Frias v. Reese*, C98–0124 FMS PR, 1998 WL 822996 (N.D.Cal. Nov.17, 1998) (finding that the community requirement and detainer exclusion were within the BOP's statutory authority and did not violate the Equal Protection and Due Process Clauses); *Arboleda v. Hayes*, No. C97–2704 CAL(PR), 1998 WL 556710 (N.D.Cal. Aug.27, 1998) (same); *Londono v. Reese*, No. C97–2811 CAL, 1998 WL 513989 (N.D.Cal. Aug.7, 1998) (same). In addition, the Fifth Circuit upheld the validity of the community requirement when it was challenged by a prisoner who was denied placement due to a concern he would be a flight risk. *See Rublee v. Fleming*, 160 F.3d 213 (5th Cir.1998).

*cert. denied,* —— U.S. ——, 118 S.Ct. 1196, 140 L.Ed.2d 325 (1998). *See Birth,* 996 F.Supp. at 1016–17. The district court also concluded in *Birth* that the BOP has the statutory authority to deny inmates with detainers lodged against them eligibility for sentence reduction if they would be unable to complete the community-based treatment phase of the sentence reduction treatment program. *See Birth,* 996 F.Supp. at 1017–18.[6]

## II

■■■ Appellants argue that the BOP lacks the statutory authority to promulgate the community requirement and detainer exclusion. When reviewing an agency's construction of a statute it administers, we apply the two-part test set forth in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). First, we examine the statute itself to determine whether Congress has directly spoken to the precise question. *See Chevron,* 467 U.S. at 842, 104 S.Ct. 2778. "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id.* at 842–43, 104 S.Ct. 2778. When, however, an agency's interpretation of a statute is in conflict with the plain language of the statute, we will not defer to that interpretation. *See Downey v. Crabtree,* 100 F.3d 662, 666 (9th Cir.1996) (quoting *National R.R. Passenger Corp. v. Boston and Maine Corp.,* 503 U.S. 407, 417, 112 S.Ct. 1394, 118 L.Ed.2d 52 (1992)).

■■■ Second, if the statute is "silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Chevron,* 467 U.S. at 843, 104 S.Ct. 2778. "In determining whether an agency's construction is permissible, the court considers whether Congress has explicitly instructed the agency to flesh out specific provisions of the general legislation, or has impliedly left to the agency the task of developing standards to carry out the general policy of the statute." *Tovar v. United States Postal Service,* 3 F.3d 1271, 1276 (9th Cir. 1993). "If Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation. Such legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute." *Chevron,* 467 U.S. at 843–44, 104 S.Ct. 2778. If the delegation "is implicit . . . a court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency." *Id.* at 844, 104 S.Ct. 2778; *accord Association of Pub. Agency Customers, Inc. v. Bonneville Power Admin.,* 126 F.3d 1158, 1169 (9th Cir.1997) ("When relevant statutes are silent on the salient question, we assume that Congress has implicitly left a void for an agency to fill. We must therefore defer to the agency's construction of its governing statutes, unless that construction is unreasonable.").

■■■ The *Chevron* reasonableness standard affords agencies less latitude than the arbitrary and capricious standard. *See Tovar,* 3 F.3d at 1277. However, we "need not conclude that the agency construction was the only one it permissibly could have adopted to uphold the construction, or even the reading [we] would have reached if the question initially had arisen in a judicial proceeding." *Chevron,* 467 U.S. at 843 n. 11, 104 S.Ct. 2778. Instead, we simply ask "whether we are compell[ed] to reject" the agency's construction. *Leisnoi, Inc. v. Stratman,* 154 F.3d 1062, 1069 (9th Cir.1998) (quotations omitted). Properly promulgated regulations, subject to the rigors of the Administrative Procedure Act, 5 U.S.C. § 553, are entitled to full *Chevron* deference. *See Jacks,* 114 F.3d at 985.

---

6. The district court did not address the validity of the detainer exclusion under the Equal Protection Clause. Nonetheless, because each Appellant alleged that the detainer exclusion violates the Equal Protection Clause in his Petition for Writ of Habeas Corpus, we consider this issue on appeal. *See A–1 Ambulance Serv., Inc. v. County of Monterey,* 90 F.3d 333, 338–39 (9th Cir.1996) ("Generally, in order for an argument to be considered on appeal, the argument must have been raised sufficiently for the trial court to rule on it.").

A. The Community Requirement.

■ The statute does not prohibit the community requirement. *See* 18 U.S.C. § 3621(e)(2)(B); *Rublee v. Fleming,* 160 F.3d 213, 215 (5th Cir.1998). To the contrary, the statute is replete with discretionary language contemplating the BOP's implied authority to design the sentence reduction treatment program.

The sentence reduction provision itself provides that a sentence "may be reduced by the [BOP]." 18 U.S.C. § 3621(e)(2)(B). This discretionary language grants the BOP broad discretion to grant or deny the one-year reduction. *See Jacks,* 114 F.3d at 984. The statute also grants the BOP discretion to maintain in custody even those prisoners who successfully complete residential substance abuse treatment: "Any prisoner who, in the judgment of the Director of the [BOP], has successfully completed a program of residential substance abuse treatment ... shall remain in the custody of the [BOP] under such conditions as the [BOP] deems appropriate." 18 U.S.C. § 3621(e)(2)(A); *see also Jacks,* 114 F.3d at 984 (holding BOP's broad discretion to grant or deny sentence reduction under § 3621(e)(2)(B) is reinforced by § 3621(e)(2)(A)).

In addition to granting the BOP discretion to keep prisoners in custody, the statute confers upon the BOP authority to administer and design multiple treatment programs. This grant of authority is demonstrated by the BOP's duty to make available "appropriate" substance abuse treatment. 18 U.S.C. § 3621(b) (1994); *see also* H.R. REP. NO. 103–320, 6 (1993) ("In effect ... subparagraph [ (e)(2)(B) ] authorizes the [BOP] to shorten by up to one year the prison term of a prisoner who has successfully completed a treatment program, based on criteria to be established and uniformly applied by the

[BOP].").  The BOP's authority to design and administer multiple treatment programs is also reflected by the requirement that the BOP transmit a report to Congress each year containing a "detailed ... description of each substance abuse treatment program, residential or not, operated by the [BOP]." 18 U.S.C. § 3621(e)(3)(A).

■ Therefore, although the statute does not expressly delegate authority to the BOP to design the sentence reduction treatment program, this power is implied by the BOP's statutory authority to exercise discretion in deciding whether to keep prisoners in custody and its authority to design and administer various treatment programs. *See Association of Pub. Agency Customers,* 126 F.3d at 1169; *Tovar,* 3 F.3d at 1276.

■ Appellants' reliance on *Downey v. Crabtree,* 100 F.3d 662, 668 (9th Cir.1996), in which this Court struck down a BOP program statement because it conflicted with the plain meaning of "convicted of a nonviolent offense," 18 U.S.C. § 3621(e)(2)(B), is misplaced. Appellants contend that the plain and unambiguous language of § 3621(e)(2)(B) requires the BOP to consider a prisoner for sentence reduction if he or she was convicted of a nonviolent offense and successfully completed a "residential substance abuse treatment program." This construction of the statute, however, directly conflicts with the plain language of the statute which permits sentence reduction upon the successful completion of a "treatment program," not "residential substance abuse treatment." 18 U.S.C. § 3621(e)(2)(B). Therefore, the statute does not preclude the BOP from reasonably exercising its discretion to require prisoners to successfully complete other treatment programs in addition to a residential substance abuse treatment program.[7]  Moreover, as noted

---

7. We note that even if "treatment program" in § 3621(e)(2)(B) were read to mean "residential substance abuse treatment," and appellants were therefore statutorily eligible for the one-year reduction, appellants would still be ineligible for the reduction under 28 C.F.R. § 550.58(a)(1)(v) and 61 Fed.Reg. 25121. Nothing in § 3621(e) prohibits the BOP from imposing the community requirement as an additiional eligibility requirement. *See Jacks,* 114 F.3d at 984.

earlier, the statute specifically grants the BOP discretion to keep prisoners who complete residential substance abuse treatment in custody. *See* 18 U.S.C. § 3621(e)(2)(A). Finally, unlike the BOP program statement at issue in *Downey,* the community requirement was promulgated subject to the rigors of the Administrative Procedure Act and, therefore, is entitled to full *Chevron* deference. *See Jacks,* 114 F.3d at 985.[8]

Because the statute implicitly delegates authority to the BOP to design and administer the sentence reduction treatment program, we must defer to the community requirement unless it is unreasonable. *See Chevron,* 467 U.S. at 844, 104 S.Ct. 2778.

The BOP established the community requirement based on a public comment by the American Psychiatric Association ("Association"). *See* 61 Fed.Reg. 25121. The BOP explained:

> The Association stated that it believed the [sentence reduction treatment] program [set forth in the BOP's interim rule published in 60 Fed.Reg. 27692] was a good idea, but expressed concern about the adequacy of transitional drug treatment services offered at an institution. [BOP] regulations in 28 C.F.R. § 550.59(a) require minimum participation of one hour per month for such transitional services. The Association stated that this minimum was probably not of sufficient intensity to facilitate a good outcome and recommended enhanced psychiatric consultation and the availability of a broad array of services. The [BOP] recognizes the importance of transitional services in drug treatment programming and agrees with the Association that an enhanced transitional

program, such as is available in a community-based program, increases the opportunity for a good outcome.

61 Fed.Reg. 25121. We are not "compelled to reject" the BOP's reliance on the Association's reasoning. *See Leisnoi,* 154 F.3d at 1069. The BOP's conclusion that enhanced transitional programming is likely to improve rehabilitative outcomes is not unreasonable.

The BOP's initial interim rule merely required one hour of transitional programming per month after a prisoner completed residential substance abuse treatment. 60 Fed.Reg. 27692, 27694 (1995) (to be codified as 28 C.F.R. § 550.59).[9] The community requirement clearly enhances transitional programming by allowing prisoners to be evaluated while they are reintegrated into the community. *See* 61 Fed.Reg. 25121. The BOP cannot "duplicate within the institution the environment of community-based transitional services." *Id.*

Nor do we find the BOP's decision to tie the community requirement to the sentence reduction incentive unreasonable; the BOP rationally concluded that transitional services in a community-based treatment program are likely to improve rehabilitative outcomes. Moreover, we are not compelled to reject a requirement that allows the BOP to monitor prisoners with a history of substance abuse in a community setting before early release. Finally, the community requirement is consistent with Congress' goal of providing eligible prisoners with aftercare treatment, *see* 18 U.S.C. § 3621(e)(1), defined as "placement, case management and monitoring of the participant in a community-based substance abuse treatment program." 18 U.S.C. § 3621(e)(5)(C).

---

**8.** We also reject Appellants' contention that they are eligible for sentence reduction because they meet the definition of "eligible prisoner" provided in 18 U.S.C. § 3621(e)(5)(B). A prisoner is merely entitled to participate in residential substance abuse treatment and aftercare if he or she is "eligible" under § 3621(e)(5)(B). Whether a prisoner is statutorily eligible for sentence reduc-

tion, however, depends on whether he or she meets the requirements of § 3621(e)(2)(B).

**9.** Section 550.59 provided: "An inmate who successfully completes a residential drug abuse program and who participates in transitional treatment programming at an institution is required to participate in such programming for a minimum of one hour per month." 28 C.F.R. § 550.59(a) (1995).

Because the community requirement is a reasonable and, therefore, permissible construction of § 3621(e), we must defer to it.

## B. The Detainer Exclusion.

■■■ Appellants also argue that the detainer exclusion exceeds the BOP's statutory authority. Having examined the statutory language as required by *Chevron*, 467 U.S. at 842–43, 104 S.Ct. 2778 it is clear to us that § 3621(e)(2)(B) is silent on the subject of prisoners with detainers. Therefore, we must consider whether the detainer exclusion is a permissible construction of § 3621(e)(2)(B). *See Chevron*, 467 U.S. at 843, 104 S.Ct. 2778. Because the statute implicitly grants the BOP authority to design and administer the sentence reduction treatment program, the detainer exclusion is permissible if it is "not unreasonable." *Association of Pub. Agency Customers*, 126 F.3d at 1169.

The detainer exclusion was established contemporaneously with the community requirement. *See* 28 C.F.R. § 550.58; 61 Fed.Reg. 25121. The basis for the exclusion is the BOP's conclusion that custodial considerations preclude prisoners with detainers from participating in a community-based treatment program. *See* 61 Fed. Reg. 25121. The BOP reasoned that prisoners with detainers pose a flight risk during the community-based treatment phase because they are subject to possible deportation upon release from custody, and therefore have reason to flee a halfway house. Conversely, prisoners without detainers have more incentive to complete the community requirement because upon its completion they will likely qualify for sentence reduction and be permitted to rejoin their communities.

■■■ We find the BOP's reasoning to be rationally-based and therefore conclude that the detainer exclusion is a permissible

exercise of the BOP's broad discretion in administering the sentence reduction treatment program. Although the detainer exclusion is a permissible construction of § 3621(e), we must determine how much deference is owed to this construction.

It is clear that at least "some deference" is required. *See Reno v. Koray*, 515 U.S. 50, 61, 115 S.Ct. 2021, 132 L.Ed.2d 46 (1995). In *Koray*, the Supreme Court held that a BOP program statement was "still entitled to some deference since it is a permissible construction of the statute" despite the fact that it did not appear in "published regulations subject to the rigors of the Administrative Procedure Act, including public notice and comment." *Koray*, 515 U.S. at 61, 115 S.Ct. 2021; *accord Jacks*, 114 F.3d at 985; *Downey*, 100 F.3d at 666. The detainer exclusion was published in the *Federal Register, see* 61 Fed.Reg. 25121, and was subject to public notice and comment; however, it was not codified in the *Code of Federal Regulations*. Therefore, although the detainer exclusion is not owed full *Chevron* deference, we conclude under *Koray* that it is owed at least "some deference" since it is a permissible construction of the statute. *See Koray*, 515 U.S. at 61, 115 S.Ct. 2021. Accordingly, we defer to the BOP's construction of § 3621(e) and hold that the detainer exclusion is a valid exercise of the BOP's authority under the statute.[10]

## III

■■■ Appellants next argue that the community requirement and detainer exclusion deprive them of due process under the Fifth Amendment in violation of the United States Constitution. "A due process claim is cognizable only if there is a recognized liberty or property interest at stake." *Schroeder v. McDonald*, 55 F.3d 454, 462 (9th Cir.1995). In *Jacks* we held

10. We reject Appellants' contention that the detainer exclusion is owed no deference because it contradicts the BOP's earlier position on the eligibility of prisoners with detainers. *See* 60 Fed.Reg. 27692. The BOP's change in position is justified by the custodial considerations which arose when the BOP implement-

ed the community requirement. *See Bicycle Trails Council of Marin v. Babbitt*, 82 F.3d 1445, 1456 (9th Cir.1996) (holding agency's changing interpretation of statute afforded less deference unless agency provides "reasoned analysis" justifying change).

that § 3621(e)(2)(B) does not create a liberty interest in sentence reduction. *See* 114 F.3d at 986 n. 4. We reasoned:

> Not only is section 3621(e)(2)(B) written in nonmandatory language, but denial of the one year reduction doesn't "impose[ ] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). In fact, denial merely means that the inmate will have to serve out his sentence as expected.

*Jacks*, 114 F.3d at 986 n. 4. Accordingly, we reject Appellants' due process claim.

## IV

■ Finally, Appellants argue that the detainer exclusion violates the Equal Protection Clause of the United States Constitution because it operates to the peculiar disadvantage of aliens.

■ The Fourteenth Amendment's Equal Protection Clause applies to the federal government through the Fifth Amendment's Due Process Clause. *See Bolling v. Sharpe*, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954). "Aliens, even aliens whose presence in this country is unlawful, have long been recognized as 'persons' guaranteed due process of law by the Fifth and Fourteenth Amendments." *Plyler v. Doe*, 457 U.S. 202, 210, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982). "Analysis of an equal protection claim alleging an improper statutory classification involves two steps. Appellants must first show that the stat-

ute, either on its face or in the manner of its enforcement, results in members of a certain group being treated differently from other persons based on membership in that group." *United States v. Lopez–Flores*, 63 F.3d 1468, 1472 (9th Cir.1995). Proof of discriminatory intent is required to show that state action having a disparate impact violates the Equal Protection Clause. *See Village of Arlington Heights v. Metropolitan Housing Dev. Corp.*, 429 U.S. 252, 265, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977). "Second, if it is demonstrated that a cognizable class is treated differently, the court must analyze under the appropriate level of scrutiny whether the distinction made between the groups is justified." *Lopez–Flores*, 63 F.3d at 1472.

■ In this case, Appellants fail to show that the detainer exclusion, either on its face or in the manner of enforcement, results in aliens as a group being treated differently from other persons based on their membership in the class of incarcerated aliens.[11] On its face, the detainer exclusion classifies prisoners as those who have detainers lodged against them and those who do not. *See* 61 Fed.Reg. 25121 (identifying "prisoners with detainers" as among the class of prisoners who could not complete a community-based program); 28 C.F.R. § 550.58. As to the manner in which the detainer exclusion is enforced, there is no evidence in the record to support Appellants' contention that the detainer exclusion disparately impacts aliens.[12] Nor is there any evidence in the

---

**11.** The Supreme Court has made clear "that, unless a classification warrants some form of heightened review because it jeopardizes exercise of a fundamental right or categorizes on the basis of an inherently suspect characteristic, the Equal Protection Clause requires only that the classification rationally further a legitimate state interest." *Nordlinger v. Hahn*, 505 U.S. 1, 10, 112 S.Ct. 2326, 120 L.Ed.2d 1 (1992). Generally, federal laws classifying persons on the basis of alienage receive less searching judicial review than do state laws classifying on that basis because the overriding national interests in immigration and foreign relations justify selective federal legislation that would be unacceptable for an individual state. *See Hampton v. Mow*

*Sun Wong*, 426 U.S. 88, 101, 96 S.Ct. 1895, 48 L.Ed.2d 495 (1976); *Lopez–Flores*, 63 F.3d at 1472–75. Therefore, in cases where federal interests predominate, judicial scrutiny of alienage classifications is relaxed to a "rational basis" standard. *See Mathews v. Diaz*, 426 U.S. 67, 83, 96 S.Ct. 1883, 48 L.Ed.2d 478 (1976).

**12.** The Supreme Court has defined a detainer as "a request filed by a criminal justice agency with the institution in which a prisoner is incarcerated, asking the institution either to hold the prisoner for the agency or to notify the agency when release of the prisoner is imminent." *Carchman v. Nash*, 473 U.S. 716, 719, 105 S.Ct. 3401, 87 L.Ed.2d 516 (1985).

record to support the allegation that the detainer exclusion was motivated by an intent to discriminate against aliens. *See Village of Arlington Heights,* 429 U.S. at 265, 97 S.Ct. 555. Appellants have merely shown that the statute results in prisoners with detainers being treated differently from prisoners without detainers.

 Because "prisoners with detainers" does not constitute a suspect class, the detainer exclusion is valid so long as it survives the rational basis test, which accords a strong presumption of validity. *See Heller v. Doe,* 509 U.S. 312, 319, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993); *NAACP, Los Angeles Branch v. Jones,* 131 F.3d 1317, 1324 (9th Cir.1997), *cert. denied,* —— U.S. ——, 119 S.Ct. 48, 142 L.Ed.2d 37 (1998) (analyzing government classification under the rational basis test after finding classification did not burden a suspect class nor a fundamental right). A government policy is valid under the rational basis test so long as it is rationally related to a legitimate government interest. *See Nordlinger v. Hahn,* 505 U.S. 1, 10, 112 S.Ct. 2326, 120 L.Ed.2d 1 (1992); *Rodriguez v. Cook,* 163 F.3d 584, 589 (9th Cir.1998).

As discussed earlier, the basis for the detainer exclusion is the BOP's reasonable concern that prisoners with detainers pose a flight risk during the community-based treatment phase. Excluding prisoners with detainers from participating in the community-based treatment phase is a reasonable means for eliminating this risk. We need not inquire whether the BOP's policy is the best means for addressing this risk because "rational-basis review in equal protection analysis is not a license for courts to judge the wisdom, fairness, or logic of legislative choices." *Heller,* 509 U.S. at 319, 113 S.Ct. 2637. We do hold, however, that excluding prisoners with de-

tainers from participating in community-based treatment programs, and consequently from sentence reduction eligibility, is at least rationally related to the BOP's legitimate interest in preventing prisoners from fleeing detainers while participating in community treatment programs. Therefore, the detainer exclusion survives rational basis review.

## V

We conclude that the district court did not err in denying Appellants' petitions for habeas corpus relief. The judgment appealed from is affirmed.

AFFIRMED.

---

The Court has further noted that detainers "generally are based on outstanding criminal charges, outstanding parole or probation-violation charges, or additional sentences already imposed against the prisoner." *Id.* The INS has authority to lodge a detainer against a prisoner under 8 U.S.C. § 1357(d). Prison-

ers with "state detainers" are protected under the Interstate Agreement on Detainers Act, 18 U.S.C.App. § 2.