**Paul N. BOWEN, Petitioner–Appellee,**

v.

**Robert A. HOOD,[1] Warden, FCI, Sheridan, Respondent– Appellant.**

Fed. R. of App. P. 43(c)(2).

Paul N. Bowen, Petitioner–Appellant,

v.

Robert A. Hood,[1] Warden, FCI, Sheridan, Respondent– Appellee.

Donald Scott, Petitioner–Appellee,

v.

Robert A. Hood,[1] Warden, FCI, Sheridan, Respondent– Appellant.

Donald Scott, Petitioner–Appellant,

v.

Robert A. Hood,[1] Warden, FCI, Sheridan, Respondent– Appellee.

Lamar Tollivar, Petitioner–Appellee,

v.

Robert A. Hood,[1] Warden, FCI, Sheridan, Respondent– Appellant.

Lamar Tollivar, Petitioner–Appellant,

v.

Robert A. Hood,[1] Warden, FCI, Sheridan, Respondent– Appellee.

Lance Ashton Jones, Petitioner– Appellee,

v.

Robert A. Hood,[1] Warden, FCI, Sheridan, Respondent– Appellant.

Lance Ashton Jones, Petitioner– Appellant,

v.

Robert A. Hood,[1] Warden, FCI, Sheridan, Respondent– Appellee.

William Dale Hollingsworth, Petitioner–Appellee,

v.

Robert A. Hood,[1] Warden, FCI, Sheridan, Respondent– Appellant.

William Dale Hollingsworth, Petitioner–Appellant,

v.

Robert A. Hood,[1] Warden, FCI, Sheridan, Respondent– Appellee.

Guy D. Taketa, Petitioner–Appellee,

v.

Robert A. Hood,[1] Warden, FCI, Sheridan, Respondent– Appellant.

Guy D. Taketa, Petitioner–Appellant,

v.

Robert A. Hood,[1] Warden, FCI, Sheridan, Respondent– Appellee.

Steven Winkelman, Petitioner–Appellee,

v.

Robert A. Hood,[1] Warden, FCI, Sheridan, Oregon Respondent–Appellant.

Steven Winkelman, Petitioner– Appellant,

v.

Robert A. Hood,[1] Warden, FCI, Sheridan, Oregon Respondent–Appellee.

Wallace Ward Payne, Petitioner– Appellee,

v.

Robert A. Hood,[1] Warden, FCI, Sheridan, OR Respondent– Appellant.

Wallace Ward Payne, Petitioner– Appellant,

v.

Robert A. Hood,[1] Warden, FCI, Sheridan, OR Respondent– Appellee.

Ovid John Teixeira, Petitioner–
Appellee,

v.

Robert A. Hood,[1] Warden, Respondent–
Appellant.

Ovid John Teixeira, Petitioner–
Appellant,

v.

Robert A. Hood,[1] Warden,
Respondent–Appellee.

Austin David Buckley, Petitioner–
Appellee,

v.

Robert A. Hood,[1] Warden, Respondent–
Appellant.

Austin David Buckley, Petitioner–
Appellant,

v.

Robert A. Hood,[1] Warden,
Respondent–Appellee.

John Peter Goulet, Petitioner–Appellee,

v.

Robert A. Hood,[1] Warden, FCI,
Sheridan, Respondent–
Appellant.

John Peter Goulet, Petitioner–
Appellant,

v.

Robert A. Hood,[1] Warden, FCI,
Sheridan, Respondent–
Appellee.

John Gavis, Petitioner–Appellee,

v.

Robert A. Hood,[1] Warden, Federal Cor-
rectional Institution, Sheridan, Or-
egon Respondent–Appellant.

Conrad Niemeier, Petitioner–Appellee,

v.

Robert A. Hood,[1] Warden, Respondent–
Appellant.

Harold T. Gray, Petitioner–Appellee,

v.

Robert A. Hood,[1] Warden, Respondent–
Appellant.

Douglas J. Gregg, Petitioner–Appellee,

v.

Robert A. Hood,[1] Warden, Respondent–
Appellant.

Ruben Castillo, Petitioner–Appellee,

v.

Robert A. Hood,[1] Warden, Respondent–
Appellant.

Sabil M. Mujahid, Petitioner–Appellee,

v.

Robert A. Hood,[1] Warden, Respondent–
Appellant.

Robert W. Curley, Petitioner–Appellee,

v.

Robert A. Hood,[1] Warden, Respondent–
Appellant.

Gary Lee Southwick, Petitioner–
Appellee,

v.

Robert A. Hood,[1] Warden, Respondent–
Appellant.

Patrick A. Hansen, Petitioner–
Appellant,

v.

Robert A. Hood,[1] Warden,
Respondent–Appellee.

Robert Knaeble, Petitioner–Appellee,

v.

Robert A. Hood,[1] Warden, Respondent–
Appellant.

Karlos Lamar Grier, Petitioner–
Appellee,

v.

Robert A. Hood,[1] Warden, Respondent–
Appellant.

Daniel Lee Williams, Petitioner–
Appellee,

v.

Robert A. Hood,[1] Warden, Respondent–
Appellant.

Richard Lightbourne, Petitioner–
Appellee,

v.

Robert A. Hood,[1] Warden, Respondent–
Appellant.

Darren W. Williams, Petitioner–
Appellee,

v.

Robert A. Hood,[1] Warden, Respondent–
Appellant.

Edward Wills, Petitioner–Appellee,

v.

Robert A. Hood,[1] Warden, Respondent–
Appellant.

James Darmiento, Plaintiff–Appellee,

v.

Robert A. Hood,[1] Warden,
Defendant–Appellant.

Scott Alan Dechambeau,
Plaintiff–Appellee,

v.

Robert A. Hood,[1] Warden,
Defendant–Appellant.

Vicente Subia, Plaintiff–Appellee,

v.

Robert A. Hood,[1] Warden,
Defendant–Appellant.

Daniel Frederic Ramos, Petitioner–
Appellee,

v.

Robert A. Hood,[1] Warden, FCI
Sheridan, OR., Respondent–
Appellant.

Warren Katz, Petitioner–Appellee,

v.

Robert A. Hood,[1] Warden, Respondent–
Appellant.

Darrell L. Johnson, Petitioner–
Appellee,

v.

Robert A. Hood,[1] Warden, Respondent–
Appellant.

Brett Warden, Petitioner–Appellee,

v.

Robert A. Hood,[1] Warden, Respondent–
Appellant.

Delbert Duane Young, Petitioner–
Appellee,

v.

Robert A. Hood,[1] Warden, Respondent–
Appellant.

Michael J. Marshall, Petitioner–
Appellee,

v.

Robert A. Hood,[1] Warden, Respondent–
Appellant.

Nos. 98–36190, 99–35035, 98–36191, 99–
35041, 98–36223, 98–36224, 98–36273,
98–36274, 98–36277, 98–36279, 99–35040,
99–35080, 99–35063, 99–35090, 99–35081,
99–35082, 99–35174, 99–35175, 99–35176,
99–35177, 99–36280, 99–36281, 99–35157,
99–35232, 99–35598, 99–35627, 99–35629,
99–35631, 99–35636, 99–35637, 99–35659,
99–35672, 99–35415, 99–35416, 99–35417,
99–35418, 99–35419, 99–35420, 99–35421,
99–35422, 99–35424, 99–35425, 99–35430,
99–35431, 99–35432, 99–35433.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 4, 1999.

Filed Feb. 4, 2000.

Stephen R. Sady, Chief Deputy Federal Public Defender, Portland, Oregon, for petitioners-appellees Gavis Group and for petitioners-appellees-cross appellants Bowen Group.

Thomas M. Gannon, United States Department of Justice, Washington, D.C., for the respondent-appellant-cross appellee.

Before: LEAVY, FERNANDEZ, and THOMAS, Circuit Judges.

Per Curiam Opinion; Partial Concurrence and Partial Dissent by Judge FERNANDEZ; Partial Concurrence and Partial Dissent by Judge THOMAS.

PER CURIAM:

## I. INTRODUCTION

Robert A. Hood, Warden of the Federal Correctional Institution, Sheridan, Oregon, appeals the district court's grant of habeas corpus relief, 28 U.S.C. § 2241, to a number of prisoners.[2] Each of them had been subjected to the Bureau of Prisons' determination that certain categories of prisoners would not be granted early release pursuant to the provisions of 18 U.S.C. § 3621(e)(2)(B). One group, which we will call the Gavis Group,[3] had not even been provisionally admitted to a substance abuse treatment program at the time that the Bureau adopted its exclusionary categories. When the Bureau adopted its exclusionary categories, the other group, which we will call the Bowen Group,[4] had received provisional eligibility for early release after completing a substance abuse treatment program, but had not yet entered a program.

---

2. See Gavis v. Crabtree, 28 F.Supp.2d 1264 (D.Or.1998) (Gavis I ); Bowen v. Crabtree, 22 F.Supp.2d 1131 (D.Or.1998) (Bowen I ).

3. The Gavis Group consists of John Gavis, Conrad Niemeier, Harold T. Gray, Douglas J. Gregg, Ruben Castillo, Sabil M. Mujahid, Robert W. Curley, Gary Lee Southwick, Patrick A. Hansen, Robert Knaeble, Karlos Lamar Grier, Daniel Lee Williams, Richard Lightbourne, Darren W. Williams, Edward Wills, James Darmiento, Scott Alan DeCham-

beau, Vincente Subia, Daniel Frederic Ramos, Warren Katz, Darrell L. Johnson, Brett Warden, Delbert Duane Young, and Michael J. Marshall.

4. The Bowen Group consists of Paul A. Bowen, Austin David Buckley, John Peter Goulet, William Dale Hollingsworth, Lance Austin Jones, Wallace Ward Payne, Donald Scott, Guy D. Taketa, Ovid John Teixeira, Lamar Tollivar and Steven Winkelman.

The Bowen Group has cross appealed because, after issuing its judgment, the district court issued a clarifying order, which, as the group's members see it, reduced their relief below that first intended.

We reverse the district court as to the Gavis Group, but affirm as to the Bowen Group.

## II. BACKGROUND

This case revolves around a program created by Congress for the purpose of providing substance abuse treatment to prisoners. It directed the Bureau to "make available appropriate substance abuse treatment for each prisoner the Bureau determines has a treatable condition of substance addiction or abuse." 18 U.S.C. § 3621(b). In order to give at least some prisoners an added incentive to participate in a substance abuse treatment program, Congress also provided that "[t]he period a prisoner convicted of a nonviolent offense remains in custody after successfully completing a treatment program may be reduced by the Bureau of Prisons, but such reduction may not be more than one year from the term the prisoner must otherwise serve." 18 U.S.C. § 3621(e)(2)(B).

For some time, the Bureau has been of the belief that a prisoner whose crime of conviction involved the possession, carrying, or use of a firearm should be ineligible for early release. At first, the Bureau implemented that belief by decreeing that those possessors of firearms had committed crimes of violence, and, therefore, had not been "convicted of a nonviolent offense." *Id.* We declared that the Bureau thereby misinterpreted the meaning of "nonviolent offense" because it could not declare that possession of a firearm, either as the very offense of conviction or as an enhancement, was itself enough to make a crime one of violence. *See Davis v. Crabtree,* 109 F.3d 566, 569 (9th Cir.1997); *Downey v. Crabtree,* 100 F.3d 662, 670 (9th Cir.1996).

The Bureau acceded to that interpretation, but, nothing deterred from its continuing belief that individuals in that category should not be given early release into the community, it determined that it would not rest its categorical exclusion of them on a direct interpretation of the specific statutory language, "nonviolent offense." Rather, it would exercise its discretion under the statute to refuse them early release, regardless of that language. Therefore, it issued a change notice to the Early Release Qualifications Chapter of its Drug Abuse Manual, in which it declared, as pertinent here:

> As an exercise of the discretion vested in the Director of the Federal Bureau of Prisons, the following categories of inmates are not eligible for early release ... [i]nmates whose current offense is a felony ... that involved the carrying, possession, or use of a firearm or other dangerous weapon or explosives (including any explosive material or explosive device)....

CN—03, P.S. 5330.10 (October 9, 1997).

On October 15, 1997, the Bureau also published an interim regulation, in which it explained, in pertinent part, that:

> This interim rule avoids this complication [various court decisions] by using the discretion allotted to the Director of the Bureau of Prisons in granting a sentence reduction to exclude inmates whose current offense is a felony ... that involved the carrying, possession, or use of a firearm or other dangerous weapon or explosives (including any explosive material or explosive device)....

Drug Abuse Treatment and Intensive Confinement Center Programs: Early Release Consideration, 62 Fed.Reg. 53690 (1997) (interim rule). True to its explanation, the rule provided that "as an exercise of discretion ... inmates whose current offense is a felony ... that involved the carrying, possession, or use of a firearm" were categorically excluded from early release. *Id.* at 53691, 28 C.F.R. § 550.58(a)(1)(vi)(B).

The Gavis Group claimed that the Bureau exceeded its authority when it adopted that position. The district court

agreed. *See Gavis I,* 28 F.Supp.2d at 1266–67. Of course, if that is so, the Bowen Group would also be entitled to relief. For its part, however, the Bowen Group specifically asserted that the Bureau exceeded its authority because it retroactively applied that position to the members of the group. Each had previously received a provisional favorable eligibility determination, but had not yet entered the program. Again, the district court agreed. *See Bowen I,* 22 F.Supp.2d. at 1135. These appeals followed.

## III. JURISDICTION AND STANDARDS OF REVIEW

The district court had jurisdiction pursuant to 28 U.S.C. § 2241. We have jurisdiction pursuant to 28 U.S.C. §§ 1291 & 2253(a).

■ We review the district court's grant or denial of a writ of habeas corpus de novo. *See Downey,* 100 F.3d at 663–64. However, this case involves the interpretation of a statute by the Bureau, and that presents slightly different considerations. As we have said:

In interpreting a statute we must examine its language. If "the statute is clear and unambiguous, that is the end of the matter." There is no need to look beyond the plain meaning in order to derive the "purpose" of the statute. At least there is no need to do so when the result is not absurd.

If the language is not clear, Congress's intent must still be ascertained.... "If a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect."

If, however, the statute is ambiguous, "the question for the court is whether the agency's answer is based on a permissible construction of the statute." And the "agency's interpretation of a statute that it is entrusted to administer is entitled to considerable weight unless

it is 'arbitrary, capricious, or manifestly contrary to the statute.'"

*Tang v. Reno,* 77 F.3d 1194, 1196–97 (9th Cir.1996) (citations omitted). Moreover, those strictures still have force when "the Bureau's interpretation appears only in a 'Program Statemen[t]'—an internal agency guideline—rather than in 'published regulations subject to the rigors of the Administrative Procedur[e] Act, including public notice and comment.'" *Reno v. Koray,* 515 U.S. 50, 61, 115 S.Ct. 2021, 2027, 132 L.Ed.2d 46 (1995). As the Supreme Court has said, "BOP's internal agency guideline, which is akin to an 'interpretive rule' that 'do[es] not require notice and comment,' is still entitled to some deference, since it is a 'permissible construction of the statute.'" *Id.* (citations omitted); *see also McLean v. Crabtree,* 173 F.3d 1176, 1184 (9th Cir. 1999), *cert. denied,* —— U.S. ——, 120 S.Ct. 814, 145 L.Ed.2d 685 (2000).

## IV. DISCUSSION

As we have already suggested, the first question before us is whether the Bureau's interpretation is invalid, and only then need we consider whether it was applied to the Bowen Group retroactively. The Gavis Group cannot make the retroactive claim because its members had not received any form of acceptance into a substance abuse treatment program at the time the Bureau's interpretation was adopted.

The reversal of the district court's order with respect to the Gavis Group requires us also to address whether the Bureau's rule change can be applied retroactively to the members of the Bowen Group. Our decision in *Cort v. Crabtree,* 113 F.3d 1081 (9th Cir.1997), compels the conclusion that the exclusion of the Bowen Group from early release eligibility has an impermissible retroactive effect.

### A. *Validity of Interpretation*

■ The district court was of the opinion that the Bureau could not adopt its present position because we had ruled that

the Bureau was in error when it attempted to rest adoption of that position on an interpretation of "nonviolent offense." *See Gavis I,* 28 F.Supp.2d at 1266–67. With all due respect, the conclusion simply does not follow from the premise.

■ It is clear enough that the Bureau could not go on construing the phrase "nonviolent offense" in a manner contrary to our prior rulings. *See Neal v. United States,* 516 U.S. 284, 294–95, 116 S.Ct. 763, 768–69, 133 L.Ed.2d 709 (1996); *NLRB v. Ashkenazy Property Management Co.,* 817 F.2d 74, 75 (9th Cir.1987). But the Bureau did not do that at all. Once it was foreclosed from a simple interpretation of the statute, it, instead, exercised the discretion that Congress indisputably conferred upon the Director and reached the same conclusion on an entirely different ground. It can hardly be doubted that "an agency is free on remand to reach the same result by applying a different rationale." *Arizona Electric Power Cooperative, Inc. v. United States,* 816 F.2d 1366, 1373 (9th Cir.1987). Our prior decisions could have "held no more and no less than that the [Bureau's] first [position] was unsupportable for the reasons supplied by that agency." *SEC v. Chenery Co.,* 332 U.S. 194, 200, 67 S.Ct. 1575, 1579, 91 L.Ed. 1995 (1947). Here, the Bureau relied on an entirely different part of the statute for its decision. We see nothing sinister in that.

■ There can be little doubt that the Bureau has "broad discretion in administering the sentence reduction treatment program." *McLean,* 173 F.3d at 1184. That discretion extends to the creation of categorical exclusions. *See id.; Jacks v. Crabtree,* 114 F.3d 983, 986 (9th Cir.1997), *cert. denied,* 523 U.S. 1009, 118 S.Ct. 1196, 140 L.Ed.2d 325 (1998). No doubt, the exercise must be reasonable, but we see nothing unreasonable in the Bureau's making the common-sense decision that there is a significant potential for violence from criminals who carry, possess or use firearms while engaged in their felonious employment, even if they have wound up

committing a nonviolent offense this time. *Cf. Bush v. Pitzer,* 133 F.3d 455, 458 (7th Cir.1997) (upholding categorical release denial to those whose crimes present a serious potential risk of physical force against another). Congress did not say that the Bureau could not reach that conclusion. It *did* say that the Bureau could not grant a reduction to those whose current crime of conviction was a violent offense, but that is quite a different matter.

Finally, this is not a case of Bureau tergiversation; the Bureau has always been of the firm belief that the sort of criminal of which the members of the Bowen Group and the Gavis Group are representative should not be entitled to a reduction. But even if the Bureau had shifted its position, that would not necessarily mean that we should look askance at its current position. *See NLRB v. Local Union No. 103, International Ass'n of Bridge Workers,* 434 U.S. 335, 351, 98 S.Ct. 651, 660–61, 54 L.Ed.2d 586 (1978); *Montana Power Co. v. EPA,* 608 F.2d 334, 347 (9th Cir.1979). *But see Oregon v. BLM,* 876 F.2d 1419, 1425 (9th Cir.1989). At any rate, there was no vacillation here; there was only the valid use of a separate provision of the statute to reach the same result. Other courts agree with our position.

Thus, in *Bellis v. Davis,* 186 F.3d 1092 (8th Cir.1999), *petition for cert. filed,* ___U.S.L.W. ___ (U.S. Dec. 15, 1999) (no. 99–7558), the court was presented with a claim that the BOP position which we deal with here was improper. The Eighth Circuit had previously ruled that the provision which limits relief to nonviolent offenders could not be used to exclude those who possessed a weapon while committing an offense. *See id.* at 1095. The court did not see that as relevant because, as it said, "[w]e did not, however, address the question at issue in this appeal, namely, whether the BOP may, as an exercise of its discretion, look to sentencing factors in deciding which individuals amongst statutorily eligible inmates are appropriate candidates for early release." *Id.* at 1095

(citation omitted). It stated that the BOP did, in fact, have that discretion. *See id.* at 1094. Moreover, it opined:

> Nor does the statute mandate that the BOP exercise its discretion by making individual, rather than categorical, assessments of eligibility for inmates convicted of nonviolent offenses. In fact, Congress expected the BOP to make early-release determinations "based on criteria to be established and uniformly applied...."

> The BOP chose to exercise the discretion granted to it under the statute by identifying additional categories of inmates who were ineligible for the early-release program because, although their offenses may be "nonviolent" within the meaning of the statute, their underlying conduct indicates that they pose a serious risk to public safety. We think that the BOP's decision to exclude these additional categories of inmates from eligibility represents a manifestly permissible construction of the statute and an appropriate exercise of the BOP's discretion.

*Id.* at 1094–95 (citations omitted); *see also LaSorsa v. Menifee,* 10 F.Supp.2d 316, 317 (S.D.N.Y.1998) (although BOP cannot use "nonviolent offense" language to preclude release, it can categorically exercise discretion to do so), *affirmed,* 182 F.3d 900 (2nd Cir.1999) (table); *cf. Bush,* 133 F.3d at 458 (a prisoner whose offense was nonviolent, but whose underlying conduct was prone to violence, may be excluded). Just so!

In fine, we do at least owe some deference to the Bureau's interpretation of the statute in a way that allowed it to exercise its discretion to categorically refuse to reduce the custody time of armed felons. Because its exercise of that discretion was both permissible and reasonable, we defer to it and hold that the Bureau's discretion was validly exercised.

## B. *Retroactive Application*

■ Because we hold that the Bureau may under its discretionary authority categorically exclude felon firearm possessors

from early release eligibility, we must determine whether the application of the rule change to the Bowen Group is impermissibly retroactive. In this case, the district court correctly concluded that the Bureau wrongfully disrupted the Bowen Group's settled expectations because they had already been provided with a determination of eligibility prior to the date the amended regulation became effective. Therefore, under *Cort,* the regulation has impermissible retroactive effect.

In *Cort,* we applied the bedrock principle that "retroactivity is not favored in the law" to determine whether the Bureau could deny early release eligibility to inmates based on drug abuse treatment program changes implemented after the inmates had already been notified that they were eligible for early release. *Cort,* 113 F.3d at 1084 (quoting *Bowen v. Georgetown Univ. Hospital,* 488 U.S. 204, 208, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988)). Because the "settled expectations [of inmates] should not be lightly disrupted," *Landgraf v. USI Film Products,* 511 U.S. 244, 265, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994), we held that the program change could not be applied "to prisoners already in the treatment program on the date of its adoption, much less to prisoners who have already been found to be eligible." *See Cort,* 113 F.3d at 1086–7. Three considerations were prominent in our decision. We noted first that the language of the change notice provided no indication that the program change was to be applied retroactively. *See id.* It was also clear that the Bureau intended to render a binding final decision of early release eligibility, subject only to the completion of the 500–hour drug abuse treatment program. *See id.* at 1085. Finally, we rejected as irrelevant the Bureau's contention that it could freely change its eligibility determination because it retained discretion under the statute to grant or deny a sentence reduction even after an inmate completed the treatment program. *See id.*

Despite the Bureau's assertions to the contrary, these reasons apply with equal force to the Bowen Group inmates. The language of both the Federal Register notice and Program Statement 5162.04 makes no indication that the regulatory and program changes were to be applied retroactively to inmates already notified of their eligibility for early release. Also, as in *Cort*, the Bureau continues to treat its eligibility notification as a binding "decision" which can be appealed through an administrative remedy procedure, rather than a temporary recommendation. *See Cort*, 113 F.3d at 1085. Moreover, the Bureau's contention that it retains discretion under the statute to grant or deny a sentence reduction remains irrelevant for the purposes of this appeal. Rather, the sole question is whether the Bureau must still consider the inmates' request for early release, having already notified them of their eligibility.

▆ The Bureau argues that the insertion of the phrase "this eligibility is provisional and may change" in each of the eligibility notices given to the Bowen Group inmates establishes that they could not have had any settled expectations of early release eligibility. It—and the dissent—point to the various definitions of the term "provisional" as "temporary" or "conditional" or "existing or serving until permanently or properly placed" to support their contention that the import of the notices was made clear to the inmates. *See Black's Law Dictionary* 1102 (5th ed.1979); *Webster's Third New International Dictionary* 1827 (1981); *The Random House College Dictionary* 1065 (revised ed.1982).

**5.** *Loss of Provisional Early Release.* An inmate may lose his or her provisional early release at any time for failure to successfully complete all components of the drug treatment program (including transitional services), or for committing certain prohibited acts.

Inmates are to be advised that they may use the administrative remedy procedure to appeal decisions regarding early release.

In determining the meaning given to the term "provisional" in the early release eligibility notices, however, we need not look to its dictionary definition. *Cf. U.S. v. Mohrbacher*, 182 F.3d 1041, 1047 (9th Cir. 1999). In section 6.3 of the change notice, which enumerates the requirements for providing an inmate with notice of early release eligibility, the Bureau underscores that the term "provisional" refers *only* to the successful completion of all phases of the drug abuse treatment program:

> *Provisional* Eligibility for 18 U.S.C. § 3621(e) Early Release. Inmates must be specifically informed that a sentence reduction is contingent upon continued positive behavior and successful participation in all components of the program, including community transitional services.

Change Notice CN–03 to Program Statement 5330.10, at 7 (Oct. 9, 1997). The Bureau further states that an inmate may lose his early release eligibility only for failure to complete the treatment program.[5] The Bureau makes no indication that it intended the term "provisional" to apply to any changes in the law or new rules or regulations.

The record further supports the conclusion that the insertion of the term "provisional" in the residential drug abuse treatment program contract did not alter the Bureau's long-held policy that early release eligibility was conditioned only upon successful completion of the treatment program.[6] *See Cort*, 113 F.3d at 1085 (inmates eligible for sentence reduction subject only to successful completion of program). As such, it is clear that, even with the addition of the term "provisional,"

Change Notice CN–03 to Program Statement 5330.10, at 10 (Oct. 9, 1997).

**6.** Mary Sullivan, an executive assistant for the Bureau, stated in a facsimile that "[t]he major change is the addition of the § re: 'eligibility is provisional' (CN–01, .B3.P3) Although not in first [contract], this has always been the case."

the eligibility determination is contingent only upon completion of the program, and not on any changes in the law or regulations.

The Bureau's contention that *Cort* is distinguishable because it dealt with inmates who had both received a favorable eligibility determination program and entered the drug treatment program falls short. The Bureau asserts that none of the members of the Bowen Group could have had any settled expectations of early release eligibility because they had merely been notified of early release eligibility, but had not entered a treatment program in reliance on their notification of early release eligibility. Our decision in *Furguiel v. Benov*, 155 F.3d 1046, 1048 (9th Cir.1998), settles this question.

In *Furguiel*, we considered whether an inmate who had entered a treatment program without being notified by the Bureau that he was eligible for early release had a settled expectation of being eligible for early release. *See id.* Presumably, in such a circumstance, without more, a prisoner could have enrolled in the program because of his desire to rid himself of his drug addiction. The critical ingredient in resolving this question therefore was whether the inmate had been notified of early release eligibility. We held that "a prisoner's expectation of early release may only arise when the BOP makes a lawful determination of the prisoner's eligibility and then informs the prisoner of such eligibility." *Id.* at 1049. Thus, all that is required under our case law is that "a prisoner's notice of eligibility for early release must have accrued prior to the promulgation of § 550.58," as is the case in the instant appeal. *See id.*

The early release incentive program is an important part of Congress's effort to reduce recidivism by encouraging federal prisoners to participate in drug treatment programs. The programs require a substantial commitment by the inmate and the institution. Thus far, the programs have been successful. However, this is not a game of Lucy and the football from the world of Charles Schulz. Rather, it is a serious administrative agency program to be administered in a consistent, coherent matter. An agency cannot provide participants with a determination of eligibility based on the purported examination of objective criteria, then subsequently deny them eligibility by exercise of whim. If we expect inmates to observe the rule of law, we must adhere to it ourselves.

In sum, the BOP impermissibly applied its rule changes to the Bowen Group inmates in violation of the retroactivity doctrine after notifying them of their eligibility for early release. We further conclude that the district court did not abuse its discretion in modifying its original order pursuant to Federal Rule of Civil Procedure 60(a) to require that the Bowen Group inmates successfully complete all phases of the drug abuse treatment program before being entitled to the one-year sentence reduction.

## V. CONCLUSION

### A.

When the Director of the Federal Bureau of Prisons determined that he would exercise his discretion to categorically exclude prisoners who had possessed, carried or used firearms while they committed their felonies, that was no mere contretemps. Nor was it an administrative bouleversement directed toward overturning our ultimate authority to declare what the law is. It was, instead, a decision made pursuant to a longstanding opinion of the Bureau that "such men are dangerous," regardless of whether they think too much.[7] The decision to act was both reasonable and within the authority conferred upon the Bureau by Congress. We defer to that exercise of discretion, and uphold the determination, even though we did disapprove of an earlier attempt to reach the same result by a different path. There-

---

7. William Shakespeare, Julius Caesar act 1, sc. 2.

fore we reverse as to the members of the Gavis Group.

## B.

We, however, affirm the determination of the district court that the categorical exclusions cannot be applied to the members of the Bowen Group. Having been notified by the Bureau that they would be eligible for early release consideration, the members of the Bowen Group clearly had settled expectations of early release eligibility. The Bureau cannot now take away with its left hand what it has already given with its right. **AFFIRMED,** as to the Bowen Group members; **REVERSED,** as to the Gavis Group members.

FERNANDEZ, Circuit Judge, concurring and dissenting.

I concur in Parts I, II, III, IV–A, and V–A of the majority opinion, but for the following reasons I dissent from Parts IV–B and V–B.

The Bowen Group insists that the Bureau's position cannot be used against its members because to do so would be a forbidden retroactive application of the Bureau's views. That group relies on our decision in *Cort v. Crabtree,* 113 F.3d 1081, 1086–87 (9th Cir.1997). In *Cort,* the Bureau attempted to apply a program change to prisoners who had already commenced a comprehensive substance abuse treatment program *and* been told that they were eligible for early release. *See id.* at 1082–83. We determined that the change could not be construed as having retroactive effect. *See id.* at 1084. Were it applied retroactively, we said, the prisoners' "settled expectations" would have been disrupted. *Id.* at 1086. Thus, we said, "the Bureau's new definition of 'nonviolent offenses' cannot be applied to prisoners already in the treatment program on the date of its adoption, much less to prisoners who have already been found eligible." *Id.* Then, we concluded by saying that the change "applies only to prisoners who had neither entered the substance abuse treatment program nor received favorable eligibility determinations as of the date of its issuance." *Id.* at 1086–87. The Bowen Group puts too much weight on that decision.

In the first place, despite its somewhat broader language, the decision can only directly apply to those who have both received a favorable eligibility determination and entered the program. That is because it is only that group that the case dealt with. Perhaps that group did have settled expectations. However, as we later decided, a prisoner who had entered a substance abuse treatment program, but who had not yet been found eligible for early release, could not "urge a retroactivity argument" because he did not have settled expectations that were protected from disruption. *Furguiel v. Benov,* 155 F.3d 1046, 1048 (9th Cir.1998); *see also Delancy v. Crabtree,* 131 F.3d 780, 785–87 (9th Cir. 1997), *cert. denied,* 524 U.S. 932, 118 S.Ct. 2332, 141 L.Ed.2d 705 (1998). Similarly, a person who has received an eligibility determination, but who has not yet entered and commenced the drug abuse treatment program itself, should not be treated as having a settled expectation about the outcome. In other words, *Cort* dealt with a conjunction—entry and eligibility determination—even though its conclusion seemed to speak in the disjunctive. Because the disjunctive is dicta, it does not control here. Thus, the Bowen Group is not protected by *Cort,* even if the cases were otherwise the same.

More importantly, the cases are not the same. Retroactivity concerns are, therefore, out of place here. The key to a concern about retroactivity is whether a prisoner's settled expectations have been disrupted. If a prisoner has no settled expectation that he will be granted a reduction of his custody period, a program change will not be retroactive as to him. As we have said in a similar context:

> In order to urge a retroactivity argument, a prisoner's notice of eligibility for early release must have accrued prior to the promulgation of § 550.58. Under the factual circumstances of this case, we find that Furguiel has failed to demon-

strate any settled expectation of legitimate eligibility for early release under § 3621(e)(2)(B).

*Furguiel,* 155 F.3d at 1049 (footnote omitted).

In the case at hand, the Bowen Group could not have had a settled expectation. Unlike *Cort,* this case is not one where there had been a determination of eligibility. Rather, the Bureau told the group members that their eligibility was only provisional, and they agreed. The notice to them was clearly entitled "Provisional Notice of ... 3621(E) Eligibility," and goes on to state that it is the "current assessment ... that it does appear that you will be *provisionally* eligible for early release." (Emphasis in original.) The agreement that they signed stated, among other things, "I understand that if I have been found eligible for an early release under 18 U.S.C. § 3621(e), *this eligibility is provisional, and may change.*" (Emphasis in original.)[1]

I do not quite see how a person can claim a settled expectation that he will obtain an early release when the notice of that possibility is expressly made provisional. Whether I look at a law dictionary, a general American dictionary, or the OED, I find that provisional means just what I would expect—something that is subject to nullification, or that is tentative, or temporary, or preliminary. *See* Black's Law Dictionary 1224 (6th ed.1990) ("provisional" means "[t]emporary; preliminary; tentative; taken or done by way of precaution or ad interim."); American Heritage Dictionary 1459 (3d ed.1992) ("provided or serving only for the time being; temporary."); Websters' Third New Int'l Dictionary 1827 (3d ed.1986) ("suitable or acceptable in situation but subject to change or nullification: tentative, conditional."); Compact Oxford English Dictionary 1456

(2d ed.1991) ("of or belonging to, or of the nature of a temporary provision ... for the time being ... preparatory, preliminary."). That simply cannot convey an expectation that the denouement will be the same as the interim decision, much less a settled expectation. And, it should be emphasized, this was not sprung on the inmates mid-program, after they had devoted many hours to the program's completion. Rather, they were so informed before they actually entered and began working in the treatment program. In that respect, their expectations, if any, were even less likely to be settled than those of the prisoner in *Furguiel,* 155 F.3d at 1047, who had actually entered and begun work in the treatment program before he was notified that he would be ineligible for early release.

Nor can I accept the Bowen Group's claim that "provisional" only means, in effect, that a prisoner had to complete the treatment program before he could get early release. That would make the word a mere tautology, or, at best, an unexplained redundancy. The whole statutory scheme required that a prisoner could only obtain early release "after successfully completing a treatment program." 18 U.S.C. § 3621(e)(2)(B). And the agreement's many detailed provisions informed the prisoner that he must fully engage in and complete all parts of the program, if he expected to remain in and complete it. Obviously, the word "provisional" goes beyond those conditions; it, instead, must cover other possibilities—for example, as Program Statement 5330.10 states at ¶ 6.6, eligibility is subject to a final release review at which time the staff will "carefully review all relevant statutory and regulatory criteria."

In fine, here, as in *Furguiel,* 155 F.3d at 1049, no "settled expectation of legitimate

---

1. I am cognizant of the claims by five members of the Bowen Group that their cases are special because they, at some point, had a document in hand that did not specifically state that their eligibility was provisional. However, each of them received a provisional notice either before, or within a few days after, the date of the mentioned document, and each received that notice long before starting a drug abuse treatment program. Moreover, each received a notice of ineligibility for early release before he entered a program. Indeed, as of March 5, 1998, three of the five still had not started a program.

eligibility for early release under § 3621(e)(2)(B)" has been demonstrated.

Therefore, I concur in all but Parts IV–B and V–B of the majority opinion, and dissent as to those parts.

THOMAS, Circuit Judge, concurring in I, II, III, IV–B and V–B; dissenting to IV–A and V–A:

I join in Parts I, II, III, IV–B and V–B. However, because the regulation promulgated by the Bureau of Prisons ("Bureau") directly contravenes the plain language of the governing statute by categorically excluding prisoners expressly declared eligible by Congress, I respectfully dissent from Parts IV–A and V–A and reversing the district court's decision as to the Gavis Group.

As it pertains to the Gavis Group, this appeal presents the question of whether the Bureau may avoid the Congressional directive that non-violent offenders be eligible for sentence reductions by categorically excluding inmates convicted of certain non-violent crimes under the guise of exercising its discretionary authority to grant sentence reductions under 18 U.S.C. § 3621(e). The majority answers this question in the affirmative. I would join the Tenth and Eleventh Circuits in concluding otherwise.

Faced with a burgeoning federal prison population incarcerated for drug-related offenses[1] and evidence that prison substance abuse treatment programs sharply reduce recidivism,[2] Congress has required the Bureau to provide substance abuse treatment to federal inmates for whom the

Bureau determines has a treatable condition of substance addiction or abuse. 18 U.S.C. § 3621(b). Concerned by an apparent lack of program interest, Congress amended the statute in 1994 to provide an incentive to inmates to enter and participate in a substance abuse treatment program. *See* Violent Crime Control and Law Enforcement Act of 1994, Pub.L. No. 103–322, 108 Stat. 1796 (1994). The carrot Congress provided, which is the subject of this litigation, allows the Bureau to reduce by up to one year the period that a prisoner "convicted of a nonviolent offense remains in custody after successfully completing a treatment program." 18 U.S.C. § 3621(e)(2)(B).

From the inception of the early release program, the Bureau has pertinaciously insisted that inmates who possessed, carried, or used a firearm during the commission of their crime or who received sentence enhancements because of firearm possession should not be eligible for early release. At first, the Bureau implemented this position by adopting a regulation after public notice and comment excluding from early release eligibility any prisoner whose offense was a "crime of violence" as set forth under 18 U.S.C. § 924(c)(3). *See* 28 C.F.R. § 550.58 (1995). In subsequent program statements, the Bureau interpreted "crime of violence" to include both felon firearm possessors and prisoners whose sentences were enhanced because of firearm possession. *See Davis v. Crabtree*, 109 F.3d 566, 569 (9th Cir.1997); *Downey v. Crabtree*, 100 F.3d 662, 668–69 (9th Cir. 1996).

Upon challenge, however, we found the Bureau's position to be untenable by hold-

---

**1.** As of 1997, 63% of federal prisoners were imprisoned on drug-related offenses; more than a third admitted being under the influence of drugs or alcohol when they committed the crimes that caused their incarceration. *See* Christopher J. Mumola, U.S. Dep't of Justice, *Substance Abuse and Treatment, State and Federal Prisoners, 1997,* at 1–2 (1999).

**2.** For example, preliminary results for a study conducted for the Bureau of Prisons indicates that inmates who completed prison substance

abuse treatment programs were 73% less likely to be re-arrested with in the first six months after release than those who did not receive the treatment. *See* Federal Bureau of Prisons Office of Research and Evaluation, *TRIAD Drug Treatment Evaluation Project: Six–Month Interim Report,* at 1 (1998). Earlier studies had reported similar results. *See, e.g.* Dess A. Grangetto, *Reducing Recidivism by Substance Abusers who Commit Drug and Alcohol Related Crimes,* 10 J. Contemp. Legal Issues 383, 393 (1999).

ing that the Bureau cannot define "nonviolent offense" to include firearm possession, either as an element of the criminal offense or for sentence enhancement. *See Davis*, 109 F.3d at 569; *Downey*, 100 F.3d at 667–68; *compare Warren v. Crabtree*, 185 F.3d 1018, 1023 (9th Cir.1999) (Bureau properly determined inmates convicted for use or carrying of a firearm in relation to drug trafficking crime categorically ineligible for a sentence reduction). In part, we so held because "parity of reasoning" from our prior case law dictated that inmates convicted of firearm possession could not be denied sentence-reduction eligibility on the grounds that their offense was not nonviolent. *See Davis*, 109 F.3d at 569 (quoting *Downey*, 100 F.3d at 667).

In response to *Davis* and *Downey*, the Bureau issued an operations memorandum instructing its staff that it could not restrict early release eligibility based on sentence enhancement factors or on an interpretation of "crime of violence" to include felon firearm possession. *See* Federal Bureau of Prisons Operations Memorandum No. 038–97 (5330) (May 30, 1997).

The Bureau subsequently amended its regulation and program statement defining an inmate's eligibility for early release under § 3621(e). Rather than relying on an interpretation of the phrase "nonviolent offense," the Bureau elected to circumvent the statute, and our decisions interpreting it, by declaring the very same categories of offenders ineligible through the purported exercise of its discretion. *See* Federal Bureau of Prisons Program Statement 5162.04 §§ 1–2, § 5–6.[3]

It is clear that throughout these amendments the Bureau changed its substantive position "not a whit."[4] *Kilpatrick v. Houston*, 36 F.Supp.2d 1328, 1329 (N.D.Fla.1999), *aff'd*, 197 F.3d 1134 (11th Cir.1999); *accord Ward v. Booker*, 202 F.3d 1249, 1254 (10th Cir.2000). And the Bureau freely admits that the premise for the amendment to its regulation was to evade the import of this Court's rulings in *Davis* and *Downey*.[5] The majority's holding places this Circuit in conflict with the Tenth and Eleventh Circuits, which have relied on cases paralleling this Court's decisions in *Davis* and *Downey* to hold that the Bureau exceeded its discretionary authority in amending its regulations. *See Ward*, 202 F.3d at 1254–55 (citing *Fristoe v. Thompson*, 144 F.3d 627, 631 (10th Cir.

3. In this regulation, as it had previously, the Bureau listed several offenses, categorized as "crimes of violence," that are excludable from early-release eligibility. *See* Federal Bureau of Prisons Program Statement 5162.04 §§ 1–2, §§ 5–6, § 9. The Bureau separately denied early release eligibility to inmates who committed an offense falling within a category "identified at the discretion of the Director of the Bureau of Prisons." *Id.* at §§ 1–2, § 7; *see* 28 C.F.R. § 550.58(a)(1)(vi)(B). Among the offenses excludable under the Director's discretionary authority include, as before, inmates "whose current offense is a felony that . . . involved the carrying, possession, or use of a firearm or other dangerous weapon or explosives . . ." *Id.* at § 7.

4. As the majority points out, it is beyond cavil that the Bureau cannot now construe the phrase "nonviolent offense" to include felon firearm possession. *See Neal v. United States*, 516 U.S. 284, 294–95, 116 S.Ct. 763, 133 L.Ed.2d 709 (1996); *NLRB v. Ashkenazy Property Mgmt. Co.*, 817 F.2d 74, 75 (9th Cir. 1987).

5. In issuing its amendment, the Bureau states:

> Because of differences in application of case law among the various Federal courts, a few crimes would not be clearly covered by the Bureau's definition. This interim rule avoids this complication by using the discretion allotted to the Director of the Bureau of Prisons in granting a sentence reduction to exclude inmates whose current offense is a felony (a) that has as an element, the actual, attempted, or threatened use of physical force against the person or property of another, or (b) that involved the carrying, possession, or use of a firearm . . ., or (c) that by its nature or conduct, presents a serious potential risk of physical force against the person or property of another . . .

Drug Abuse Treatment and Intensive Confinement Center Programs: Early Release Consideration, 62 Fed.Reg. 53690 (Oct. 15, 1997) (interim rule) (to be codified at 28 C.F.R. Parts 524 and 550) (emphasis added).

1998)); *Kilpatrick,* 36 F.Supp.2d at 1329 (citing *Byrd v. Hasty,* 142 F.3d 1395, 1398 (11th Cir.1998)); *compare Bellis v. Davis,* 186 F.3d 1092 (8th Cir.1999), *petitions for cert. filed,* Nos. 99–7504 and 99–7558 (U.S. Dec. 15, 1999).

To be sure, the Bureau is accorded broad discretion over all aspects of the substance abuse treatment process, but it must exercise its discretion within the prescribed parameters of its statutory authority. *See SEC v. Sloan,* 436 U.S. 103, 118, 98 S.Ct. 1702, 56 L.Ed.2d 148 (1978) (court charged with determining whether agency's exercise of discretion consistent with scope of statutory authority). This is especially true here because "[a] prisoner's right to consideration for early release is a valuable one that we have not hesitated to protect." *Cort,* 113 F.3d at 1085 (citing *U.S. v. Paskow,* 11 F.3d 873, 877 (9th Cir.1993)). When the Bureau has rationally and validly exercised the discretion Congress vested in it, we have not hesitated to affirm the Bureau's position. *See, e.g., McLean v. Crabtree,* 173 F.3d 1176, 1182–84 (9th Cir.1999), *cert. denied,* —— U.S. ——, 120 S.Ct. 814, 145 L.Ed.2d 685 (2000). We have even supported the notion that the Bureau may exercise discretion in a categorical fashion. *See Jacks v. Crabtree,* 114 F.3d 983, 985–86 (9th Cir. 1997). However, a discretionary decision that conflicts with the plain and unambiguous language of the statute merits no deference. *See McLean,* 173 F.3d at 1182–83. An agency cannot legally renounce the express will of Congress by cloaking its repudiation under the cloth of discretion.

The majority correctly observes that an agency may often reach the same regulatory result employing a different rationale. *See Arizona Electric Power Cooperative, Inc. v. United States,* 816 F.2d 1366, 1373 (9th Cir.1987). But achieving similar results using corrected means is far different from attaining ends by evading statutory commands. The power to regulate does not include the power of statutory amendment. *See Manhattan Gen. Equip. Co. v. Commissioner of Internal Revenue,* 297 U.S. 129, 134, 56 S.Ct. 397, 80 L.Ed. 528 (1936).

It may well be that the Bureau's position is good public policy, but that is not for the Bureau—or this Court for that matter—to decide. That is a judgment reserved to the wisdom of Congress. The Bureau cannot categorically declare ineligible those inmates that Congress categorically declared eligible. Thus, I respectfully dissent from the judgment as it applies to the Gavis Group.