**Lora GALLE, Petitioner,**

v.

**Schelia A. CLARK, Warden, Federal Prison Camp, Dublin, California, Respondent.**

**No. C 04–03559 CRB.**

United States District Court, N.D. California.

Oct. 6, 2004.

Richard M. Barnett, San Diego, CA, for Petitioner.

Claire T. Cormier, San Jose, CA, for Respondent.

## MEMORANDUM AND ORDER

BREYER, District Judge.

Petitioner Lora Galle ("Galle"), an inmate at the Dublin federal prison, brings this habeas petition to challenge the Bureau of Prison's reconsideration of Galle's eligibility for early release arising out of her participation in a drug treatment program.

## BACKGROUND

Congress requires the Bureau of Prisons ("BOP") to make "available appropriate substance abuse treatment for each prisoner the Bureau determines has a treatable condition of substance addiction or abuse." 18 U.S.C. § 3621(b). Congress also requires the BOP "to provide incentives for prisoner participation in BOP drug treatment programs." 18 U.S.C. § 3621(e). In particular, Congress has directed that "[t]he period a prisoner convicted of a nonviolent offense remains in custody after successfully completing a treatment program may be reduced by the Bureau of Prisons, but such reduction may not be more than one year from the term the prisoner must otherwise serve." 18 U.S.C. § 3621(e)(2)(B).

### A. BOP regulations

Because Congress limited the reduction-in-sentence incentive to prisoners convicted of nonviolent offenses, the BOP adopted a regulation providing that inmates convicted of "crimes of violence" are categorically ineligible for early release. *See Lopez v. Davis*, 531 U.S. 230, 233, 121 S.Ct. 714, 148 L.Ed.2d 635 (2001). The BOP defined "crimes of violence" as including, among other things, a drug trafficking conviction under 21 U.S.C. section 841 if the court had enhanced the inmate's sentence for possessing a dangerous weapon during the commission of the offense. *Id.* at 233–34, 121 S.Ct. 714.

The Court of Appeals split as to the legality of the BOP's definition of crimes of violence as including a drug offense that involve possession of a firearm. Some courts held that the statute, 18 U.S.C. section 3621(e)(2)(B), required the BOP to look only to the offense of conviction and not to sentencing factors to determine if an inmate was convicted of a crime of violence. *See, e.g. Downey v. Crabtree*, 100 F.3d 662, 668 (9th Cir.1996).

In response to these court decisions the BOP adopted a new regulation in 1997. The new regulation provides, in relevant part:

(a) *Additional early release criteria.*
(1) As an exercise of the discretion vest-

ed in the Director of the Federal Bureau of Prisons, the following categories of inmates are not eligible for early release:

. . . . .

(iv) Inmates whose current offense is a felony:

. . . . .

(B) That involved the carrying, possession, or use of a firearm or other dangerous weapon. . . .

28 C.F.R. § 550.58(a) (2000). "In sum, the 1995 rule defined the statutory term 'prisoner convicted of a nonviolent offense' to exclude categorically an inmate who possessed a firearm in connection with his offense." *Lopez*, 531 U.S. at 235, 121 S.Ct. 714.

**B. BOP policy regarding the determination of eligibility for early release**

The BOP's Drug Abuse Manual provides that the BOP shall use a document identified as "Attachment J" to notify inmates of their qualification for the residential drug abuse program and their provisional eligibility for early release. Declaration of Valerie Stewart ("Stewart Decl.") Exh. 4 (Program Statement 5330.10, Chp. 6 at p. 7 (Oct. 9, 1997)). The Manual requires BOP staff to complete two parts of Attachment J: (1) qualification for residential drug treatment program, and (2) provisional early release eligibility. As to part two, the Manual provides: "Completion of Part II requires consultation with the unit team to determine if the inmate's instant offense is an excluding crime within the Categorization of Offenses Program Statement, and if a detainer is currently lodged against the inmate." *Id.* The Manual sets forth the steps the unit team must take to determine if an inmate's offense makes him or her ineligible for early release. *Id.* at p. 9. The staff shall seek advice from the Regional counsel if staff have a question as to whether a particular offense categorically disqualifies an inmate from early release. *See* Stewart Decl. Exh. 5 (Program Statement 5162.04, Categorization of Offenses (Oct. 9, 1997)).

If the Drug Abuse Program ("DAP") coordinator concludes, in consultation with the unit team, that the inmate is not categorically ineligible for early release, the director completes part II of Attachment J. In particular, the DAP coordinator confirms that the inmate does "not have a current crime that is an excluding offense in BOP categorization of offenses policy." Stewart Decl. Exh. 7 (Galle Attachment J) at p. 2. The inmate is required to sign Attachment J and, in particular, to affirm that the inmate "understand[s] that a determination of early release for me is *provisional, may change,* and depends on continued positive behavior and successful participation in all components of the program, including community transitional services." *Id.* This statement is consistent with the Manual which provides:

6.5 *Loss of Provisional Early Release.* An inmate may lose his or her provisional early release at any time for failure to successfully complete all components of the drug treatment program (including transitional services), or for committing certain prohibited acts.

Stewart Decl. Exh. 4 (Program Statement 53310.10, Chp. 6 at p. 10 (Oct. 9, 1997)).

Once the determination is made on Attachment J, the DAP coordinator completes certain other forms to record a new provisional release date. *Id.* at 9–10.

**C. Petitioner Galle**

In January 2003, Galle was sentenced in the Western District of Washington to 37 months imprisonment following her guilty plea to money laundering in violation of 18

U.S.C. section 1956. Galle's presentence report ("PSR") states that Galle and her co-defendant, Lawrence Gordon, were arrested at the home they shared in Vista, California. The PSR recounts that a subsequent search of the home uncovered $10,000 in cash, 3/4 pound of marijuana, and a loaded revolver under the pillow in the master bedroom. The sentence of Galle's co-defendant, Lawrence Gordon, was enhanced by two points for the firearm, but Galle's sentence was not similarly enhanced.

After Galle began her incarceration, she applied for participation in the drug treatment and early release program. Pursuant to the Drug Abuse Manual and the Program Statement on the Categorization of Offenses, the BOP reviewed Galle's offense and the PSR and determined that Galle was eligible for the residential drug abuse program and that she was eligible for early release. In particular, the DAP coordinator specifically concluded that Galle's offense of conviction did not render her ineligible for early release. Accordingly, the DAP coordinator and Galle completed both parts of Attachment J. Stewart Decl. Exh. 7. Galle subsequently signed an agreement to participate in the program in which she acknowledged, among other things, that her eligibility for early release is provisional and may change. Stewart Decl., Exh. 8 at p. 3. The BOP subsequently changed Galle's projected release date from October 7, 2005 to October 7, 2004. Habeas Petition Exh. C.

Galle successfully completed the 500-hour drug treatment program on or about January 30, 2004. On January 6, 2004, approximately three weeks before Galle was scheduled for transfer to community corrections, the DAP Coordinator who had initially found that Galle's offense did not disqualify her from early release changed her position. The DAP Coordinator had consulted with Regional Counsel as to Galle's offense several months after already notifying Galle that her offense did not disqualify her. The Regional Counsel concluded that the exact same information that was previously before the DAP Coordinator, namely, the PSR, disqualified Galle. In particular, the Regional Counsel found that Galle had constructive possession of the weapon that was found under her pillow shortly after her arrest and therefore her offense involved the possession of a weapon. The BOP thereafter notified Galle that she was no longer eligible for early release.

Galle administratively appealed the BOP's sua sponte reconsideration of her eligibility. The BOP denied the appeals on the basis of the PSR finding of the loaded revolver under the pillow. In the final written denial, dated July 27, 2004, the BOP explained: "The eligibility determination is provisional, and is subject to continual administrative review. This eligibility may be changed when deemed appropriate, and is not vested." Stewart Decl. Exh. 12c. Galle subsequently filed his petition.

## DISCUSSION

Among other things, Galle argues that the BOP's reconsideration of Galle's eligibility for early release nine months after initially notifying her that her offense did not render her ineligible was arbitrary and capricious and therefore unlawful. *See Lopez,* 531 U.S. at 239, 121 S.Ct. 714. The BOP argues that the initial eligibility determination was "provisional" and therefore subject to reconsideration, even after Galle had nearly completed the drug treatment program. It also contends that its new determination that Galle possessed a gun in connection with her offense is reasonable.

## A. The BOP's reconsideration of Galle's eligibility was arbitrary and capricious

█ The outcome of this petition is controlled by *Bowen v. Hood*, 202 F.3d 1211 (9th Cir.2000). In *Bowen*, the Ninth Circuit considered the retroactive effect of the BOP's 1997 adoption of the new category of offenses which exclude an inmate from the early release program, namely, felonies which involve the possession of a firearm. The court concluded that the BOP had discretion to categorically exclude felon firearm possessors from early release eligibility. *Id.* at 1220. The court also concluded, however, that the BOP could not apply that new category to inmates who the BOP had previously found were eligible for the early release program. *Id.*

A key factor in the court's analysis was its determination that it was the long-held policy of the BOP that once the BOP notified an inmate of his or her eligibility for early release, that early release eligibility was conditioned only upon successful completion of the treatment program. *Id.* at 1221–22. The Ninth Circuit's conclusion was based on statements in the Drug Abuse Manual and the Attachment J notification. *Id.* at 1221 (quoting Change Notice CN–03 to Program Statement 5330.10, at 7 (Oct. 7, 1997)); *id.* at n. 5 (quoting Change Notice CN–03 to Program Statement 5330.10 at 10 (Oct. 9, 1997)). The court commented that the "Bureau makes no indication that it intended the term 'provisional' to apply to any changes in the law or new rules or regulations." Further, the Bureau treated the initial eligibility determination as a "binding" decision which could be appealed through an administrative remedy procedure, rather than as a temporary recommendation. *Id.* at 1221.

The same policy in effect in *Bowen* was in effect when the BOP notified Galle in April 2003 that she was eligible for early release and that her offense did not disqualify her from the program. The BOP was operating pursuant to the exact same policies examined in *Bowen*, namely Program Statement 5330.10 (Oct. 9, 1997) and Program Statement 5162.04 (Oct. 9, 1997). The BOP notified Galle of her eligibility pursuant to the same form, Attachment J, that the BOP used to notify the inmates in *Bowen*. Both notices state that the determination of early release is "provisional, may change, *and depends on continued positive behavior and successful participation in all components of the program, including community transitional services." Bowen*, 202 F.3d at 1217; Stewart, Exh. 7 at p. 2. (emphasis added).

Moreover, the Court has reviewed the Program Statements submitted by the BOP in support of its response. The Program Statements compel the conclusion that the "provisional" determination of eligibility is final as to whether the inmate's offense disqualifies the inmate from early release. There is nothing in any of those statements that indicates the BOP can revisit its initial decision at any time based on the exact same information before it at the time of its initial decision; instead, the statements clarify that the DAP coordinator and unit staff are to consult with Regional Counsel if they have a question as to eligibility *at the time of the eligibility determination.*

The insertion of "provisional" in the drug treatment program contract Galle signed does not alter the Court's analysis. *See* Stewart Decl. Exh. 8 at 3. The *Bowen* court held that this statement, taken in context, meant that eligibility was conditioned only upon successful completion of the program. 202 F.3d at 1221.

Thus, at the time the BOP notified Galle in writing that her offense did not disqualify her and that she was eligible for a 12–

month reduction in sentence, the BOP "intended to render a binding final decision of early release eligibility, subject only to the completion of the 500–hour drug abuse treatment program." *Bowen*, 202 F.3d at 1220. The BOP's subsequent reconsideration of Galle's eligibility based on her offense conduct violated the BOP's longstanding policy that the "provisional" eligibility determination was conditioned only upon the inmate's successful completion of the program and was therefore arbitrary and capricious. It is, by definition, arbitrary for the BOP to review an inmate's offense and determine that the inmate is eligible for early release provided she complete a 500–hour drug treatment program and then, three weeks before she completes the program, and nine months after it advised her she was eligible, take away her eligibility based on the exact same facts it reviewed nine months earlier.

The BOP's reliance on *Lopez* is misplaced. *Lopez* held only that the BOP has the discretion to determine which inmates are categorically ineligible for early release as a result of their offense conduct. 531 U.S. at 244, 121 S.Ct. 714. The fact that the BOP may have the discretion to adopt a policy making the provisional determination of eligibility a mere initial recommendation and not a binding determination is irrelevant. At the time it notified Galle that she was eligible such was not the policy of the BOP. Since the notification was intended to be binding as to eligibility based on offense, the BOP must still consider Galle's request for early release. *See Bowen*, 202 F.3d at 1221 ("the sole question is whether the Bureau must still consider the inmates' request for early release, having already having notified them of their eligibility.").

At oral argument the BOP relied on the Ninth Circuit's decision in *Murphy v. Hood*, 276 F.3d 475 (9th Cir.2001), a case which the BOP did not cite in its response. *Murphy* does not contradict and or even cast into doubt the court's holding in *Bowen*. *Murphy* does not involve the BOP advising an inmate that her offense does not render her ineligible and then nine months later telling the inmate the exact opposite based on the exact same circumstances; instead, the BOP declared Murphy ineligible for community release based on information not initially considered by the BOP. Accordingly, *Murphy* does not support the BOP's assertion that it can at any time change its mind about whether an inmate's offense categorically disqualifies the inmate from early release. Moreover, *Murphy* involved a claim for equitable estoppel; the Court's decision here is based on the BOP's violation of its longstanding policy.

**B. The BOP's new policy on the "provisional" nature of the eligibility determination cannot be applied to Galle**

█ In its July 2004 denial of Galle's request for administrative review, the BOP stated that "the eligibility determination is provisional, and is subject to continual administrative review. This eligibility may be changed when deemed appropriate, and is not vested." Stewart Decl. Exh. 12c. This statement, of course, directly contradicts *Bowen*. At the time the BOP notified Galle of her eligibility for early release, the same policy in effect in *Bowen* was in effect for Galle: the determination was subject only to Galle's successful completion of the program.

The BOP may nonetheless argue that it now has a policy that the eligibility determinations can be reconsidered at any time. The record does not include any documents that memorialize this change of policy. Even assuming, however, that the BOP has somehow modified the policy re-

flected in the written documents reviewed by the court in *Bowen*, this new policy cannot be applied retroactively to Galle. "Having been notified by the Bureau that [she] would be eligible for early release consideration, [Galle] clearly had settled expectations of early release eligibility. The Bureau cannot now take away with its left hand what it has already given with its right." *Bowen*, 202 F.3d at 1223.

## CONCLUSION

The Ninth Circuit aptly observed in *Bowen*:

> The early release incentive program is an important part of the Congress's effort to reduce recidivism by encouraging federal prisoners to participate in drug treatment programs. The programs require a substantial commitment by the inmate and the institution. Thus far, the programs have been successful. However, this is not a game of Lucy and the football from the world of Charles Schultz. Rather, it is a serious administrative agency program to be administered in a consistent, coherent matter. An agency cannot provide participants with a determination of eligibility based on the purported examination of objective criteria, then subsequently deny them eligibility by exercise of whim. If we expect inmates to observe the rule of law, we must adhere to it ourselves.

202 F.3d at 1222. With respect to petitioner Galle, the BOP is playing "a game of Lucy and the football from the world of Charles Schultz." It reviewed the PSR and advised Galle that she is eligible for early release upon satisfactory completion of the drug treatment program. Then, three weeks before she completed the program, it inexplicably reconsidered its earlier decision based on the same information that was before it at the time of its first decision. This reconsideration violated BOP policy and Galle's settled expectations and was therefore arbitrary and capricious.

The petition for habeas corpus is GRANTED. The BOP is directed to immediately vacate its rescission of Galle's eligibility for early release.

**IT IS SO ORDERED.**